LUCIA M. PEABODY *vs.* THE SCHOOL COMMITTEE OF THE CITY
OF BOSTON.

Suffolk.   June 17. — June 29, 1874.

Under the provision of the revised charter of the city of Boston, (St. 1854, *c.* 448,
§ 24,) that "the board of aldermen, the common council, and the school committee,
shall have authority to decide upon all questions relative to the qualifications,
elections and returns of their respective members," the decision of the school com-
mittee, declaring a seat in the board to be vacant, for want of legal election and
qualification, is conclusive, and cannot be revised by this court upon petition for a
writ of mandamus, although the school committee states in its record, as the sole
reason for its decision, that the petitioner is a woman.

GRAY, C. J.   The petitioner having been chosen by the legal
voters of one of the wards of the city of Boston, at the annual
municipal election in December last, a member of the school com-
mittee of the city ; and it having been declared by vote and reso-
lution of a majority of the school committee, at a meeting duly
held, that she had not been legally elected, that she was legally
disqualified, and that her seat was vacant, for the sole reason (as
appears by the record of the school committee, as well as by the
statement of facts agreed, upon which the case has been submitted
by the counsel of the petitioner, and by the city solicitor in be-
half of the school committee, to the decision of the court) that
she is a woman ; she has applied for a writ of mandamus to com-
pel the school committee to admit her to her rights as a member
thereof.

Both parties have manifested a desire to obtain the opinion of
this court upon the question whether under the laws of the Com-
monwealth a woman can be a member of a school committee, and
have agreed that according to such opinion a peremptory writ of
mandamus shall issue, or the petition be dismissed ; and the
learned counsel on either side have concurred in contending that
the court has jurisdiction of the question in this form of proceed-
ing.

But neither the agreement of parties nor the opinion of counsel
can justify the court in rendering a judgment, unless it is satisfied
that it has been vested by the Constitution and laws of the Com-
monwealth with jurisdiction over the subject matter to be deter-
mined.   It is the duty of the court therefore, in the first place, to

consider whether the case stated by the parties is within its jurisdiction.  This question is an important one, and has, with the assent of the counsel and the aid of their learned briefs, been considered by all the members of the court, including Justices Ames and Endicott, who did not hear the oral argument at the bar.

The question of jurisdiction depends upon the construction and effect of that section of the revised charter of the city of Boston, which provides that "the board of aldermen, the common council, and the school committee, shall have authority to decide upon all questions relative to the qualifications, elections and returns of their respective members."  St. 1854, *c.* 448, § 24.

To assist us in the interpretation of this provision, we naturally turn to instances of the use of like words, which may be assumed to have been in the mind of the legislature when they framed it.

The Constitution of the Commonwealth declares that "the Senate shall be the final judge of the elections, returns and qualifications of their own members, as pointed out in the Constitution ; " and that "the House of Representatives shall be the judge of the returns, elections and qualifications of its own members, as pointed out in the Constitution."  Const. Mass. *c.* 1, § 2, art. 4 , § 3, art. 10.  It cannot be doubted that either branch of the legislature is thus made the final and exclusive judge of all questions whether of law or of fact, respecting such elections, returns or qualifications, so far as they are involved in the determination of the right of any person to be a member thereof ; and that while the Constitution, so far as it contains any provisions which are applicable, is to be the guide, the decision of either house upon the question whether any person is or is not entitled to a seat therein cannot be disputed or revised by any court or authority whatever.  *Coffin* v. *Coffin*, 4 Mass. 1, 34, 35.  Mass. Election Cases, (ed. 1853,) 8, 10, 28, 30.  1 Kent Com. (12th ed.) 235. The only form in which the justices of this court can properly express any opinion upon that subject is under that clause of the Constitution which authorizes each branch of the legislature, as well as the governor and council, to require it upon important questions of law and on solemn occasions.  Const. Mass. *c.* 3, art. 2.  *Opinion of Justices*, 10 Gray, 613.

The Constitution also authorizes the general court "to name and settle annually or provide by fixed laws for the naming and settling all civil officers within the said Commonwealth, the election and constitution of whom are not hereafter in this form of government otherwise provided for." Const. Mass. *c.* 1, § 1, art. 4. As school committees are not named or provided for in the Constitution, the mode in which they shall be elected or ap· pointed, and the results of such election or appointment ascer tained and determined, is thus intrusted to the discretion of the legislature.

The original Constitution of Massachusetts contained no provision authorizing the general court to establish cities. But the increase of population, especially in the town of Boston, made it so inconvenient to regulate municipal affairs in the primary meetings of the inhabitants, that by an amendment of the Constitution in 1820 the general court was expressly authorized to erect and constitute municipal or city governments in any town containing twelve thousand inhabitants. Const. Mass. amendment 2. The same causes thus induced the establishment of organized local governments by delegates chosen by the people, in the more populous municipalities of the Commonwealth, that nearly two centuries before had brought about the election of representatives to the general court, which according to the terms of the charter and the practice upon the first settlement consisted of all the freemen of the Colony. 1 Winthrop's Hist. New England, 128, 1 Mass. Col. Rec. 118. *Commonwealth* v. *Roxbury*, 9 Gray, 451, 480.

The first city charter of Boston provided for a municipal government, with a mayor as the executive head, and a city council consisting of two branches — the mayor and twelve aldermen, and the common council with four members from each ward. The votes for members of both boards were to be given in ward meetings and returned by the ward officers. It was made the duty of the mayor and aldermen to meet within two days after the election and examine the returns of votes for mayor and aldermen, ascertain and determine the persons chosen, and give notice in writing to them, and, in case of the whole number not being chosen, to issue warrants to the ward officers for a new election. Each person chosen a member of the common council was to be

furnished within two days by the ward officers with a certificate thereof, " which certificate shall be presumptive evidence of the title of such person to a seat in the common council; but such council howev·r shall have authority to decide ultimately upon all questions relative to the qualifications, elections and returns of its members." St. 1821, c. 110, §§ 5–7. Each board, the mayor and aldermen by necessary implication, and the common council by express words, was thus made the judge of the qualifications, elections and returns of its members.

The city charter of Lowell contained similar provisions as to the mayor and aldermen; and, as to the common council, a clause exactly like that in Boston. St. 1836, c. 128, §§ 2, 5, 20. The city charter of Cambridge provided that the board of aldermen and the common council should each be " the final judge of the election and qualifications of its members, and whenever a vacancy shall occur by death, resignation or otherwise, may order a new election." St. 1846, c. 109, §§ 13, 14. The acts establishing the cities of Roxbury, Charlestown, New Bedford, Worcester, Lynn, Newburyport, Springfield, Lawrence and Fall River, all provided that each board should " keep a record of its own proceedings, and judge of the elections of its own members," and that in case of failure of election, or of vacancy, a warrant should be issued for a new election. Sts. 1846, c. 95, § 6 ; 1847, c. 29, § 6 ; c. 60, § 6 ; 1848, c. 32, § 6 ; 1850, c. 184, § 6 ; 1851, c. 296, § 6 ; 1852, c. 94, § 6 ; 1853, c. 70, § 6 ; 1854, c. 257, § 6.

The Legislature has thus clearly manifested its intention that in Boston, and in every other city established previously to the passage of the act now before us, the question of the right of any person to a seat in either of the two boards chosen by the people to serve as their representatives in the government of the city, (as in the case of the members of each branch of the legislature of the Commonwealth,) should be at once and finally determined by the body of which such person claims to be a member, so as to enable the organization to be completed, vacancies to be filled up, and the entire body to proceed with a full representation of its constituents to the transaction of its appropriate business, without waiting for the comparatively slow progress of judicial proceedings for the decision of any question of fact or of law upon which such right may depend. And we are not aware of a

single instance, during the half century which has elapsed since the first city government was established, in which the right of a person to a seat in either branch of the council of any city in this Commonwealth has been made the subject of a suit in the ordinary courts of justice.

The school committee of the city of Boston, being more numerous, and charged with the supervision of larger interests, than the school committees of other cities and towns, has been placed by the express words of the revised city charter upon the same footing in this respect as the board of aldermen and the common council. Its decision declaring the petitioner not to be entitled to a seat as a member thereof is therefore equally final.

The statement, upon its record, of the reasons which influenced its action, is not required by law, and cannot confer upon the courts any authority to consider a question which the legislature, in the exercise of the powers vested in it by the Constitution, has made it the duty of the school committee to decide finally and without appeal.                *Petition dismissed.**

*G. S. Hale & T. W. Clarke*, for the petitioner, in support of the jurisdiction, cited *Conlin* v. *Aldrich*, 98 Mass. 557 ; *State* v. *Wilmington*, 3 Harring. (Del.) 294, 299, 309 ; *State* v. *Fitzgerald*, 44 Misso. 425 ; *State* v. *Funck*, 17 Iowa, 365 ; *Ex parte Heath*, 3 Hill, 42, 52 ; *Rex* v. *Askew*, 4 Bur. 2186–2188 ; *Rex* v. *Mayor*, *&c. of London*, 9 B. & C. 1, 26, 27 ; *Attorney General* v. *Poole*, 4 Myl. & Cr. 17 ; *Parr* v. *Attorney General*, 8 Cl. & Fin. 409 ; 1 Dillon on Munic. Corp. §§ 141 *& seq. ;* 2 Ib. §§ 665–667.

*J. P. Healy*, for the respondents, upon the same point, cited *Howard* v. *Page*, 6 Mass. 462 ; *Strong, petitioner*, 20 Pick. 484 ; *Carpenter* v. *County Commissioners*, 21 Pick. 258.

---

* On June 30, the legislature passed an act, entitled " An act to declare women eligible to serve as members of school committees ; " providing that " no person shall be deemed to be ineligible to serve upon a school committee by reason of sex ; " and to take effect upon its passage. St. 1874, *c.* 389.