Hillsborough, ?
June, 1894. ∫

ATTORNEY-GENERAL (*ex rel. Gregg*) *v.* SANDS.

The finding of facts by the city councils in convention upon a contest relating to the election of mayor is final, and the question cannot be retried on an information in the nature of a *quo warranto*.

INFORMATION, in the nature of a *quo warranto*, filed by the attorney-general, alleging the relator's election to the office of mayor of Nashua and the defendant's usurpation of the office. The question, which of the candidates received a plurality of votes, was contested, and the city councils in convention heard the parties and determined it in favor of the defendant. The

relator claimed that certain ballots counted by the convention for the defendant were not properly marked as votes for him, and that, if they were rejected, the relator was elected.

*John M. Mitchell*, for the relator.

*Frank N. Parsons, Edward H. Wason*, and *Charles J. Hamblett*, for the defendant.

*Per Curiam.*\* It is provided in P. S., c. 47, s. 2, that, "The city councils shall meet in convention on the day appointed by law or ordinance for that purpose, and the city clerk, having entered upon the record the number of votes given in each ward for every person voted for as mayor, shall lay before the convention the returns of such votes, and the convention shall examine the same and declare the person who has the largest number of votes to be elected mayor and cause him to be notified of his election." Section 3 provides that, "In case the election of mayor is contested, the city councils in convention shall have power to send for persons and papers, may inquire into the correctness of the returns, and shall hear and receive evidence as to any fraud or misconduct in relation to the election; and for that purpose may adjourn from time to time, not later than the time appointed for the convention of the new city councils." The question presented is whether the decision of the city councils of Nashua that the defendant was elected mayor is conclusive, or whether it may be again litigated in this proceeding.

"As the election officers perform for the most part ministerial functions only, their returns . . . are not conclusive, . . . but the final decision must rest with the courts. This is the general rule, and the exceptions are of those cases . . . where a special statutory board is established with powers of final decision." Cool. Con. Lim. 735. "When the statute creates a special tribunal and prescribes special proceedings for the trial of contested election cases, and the tribunal to which the jurisdiction is given is vested with full powers to adjudicate all questions involved in such cases, the courts will not take jurisdiction by *quo warranto* at common law." Paine Elections, s. 860. This is a mere application to election cases of the general rule that "when the legislature intend a court's decision of questions of fact shall be revisable by another tribunal on a new trial of the whole case, whether there is error of law or not, an appeal is ordinarily provided." *Boody* v. *Watson*, 64 N. H. 162, 186. When no appeal is provided from the decision of the constituted tribunal on questions of fact properly before it, the inference is that the legislature intended that the decision should be final. In *Gregg* v.

---

\* See foot-note on page 22.

*Goodrich*, 67 N. H. 543, it was settled that the city councils in convention are not only a board of canvassers of the election returns for mayor, but also a tribunal empowered to try and decide all questions of law and fact involved in his election. Being judges of the election, with all the power that this court has in a *quo warranto* proceeding to hear and weigh evidence and decide questions of fact, they come within the general rule above mentioned. *Doughty* v. *Little*, 61 N. H. 365. If there are exceptions to this general rule, the present case is not one. On the subject of an exception the statute is silent, and there is no evidence from which it could be inferred that an exception was intended by the legislature in cases of this character. There is no more evidence of a legislative purpose that the convention's findings of fact may be retried in this court, than that the findings of fact by fence-viewers may be reviewed in the same way. P. S., *c.* 143, *s.* 19.

The fact, that the statute giving the convention power to adjudicate upon the subject of the election of a mayor contains no express language making their decision final and exclusive, does not amount to a demonstration that the legislature intended that the case might be retried in this court on a proceeding like the present one. It is evidence having some bearing upon the question of legislative intent, and in the absence of other evidence it might be conclusive. But it does not exclude all other evidence of the force and effect of statutory language.

Article 21, Part 2, of the constitution provides that "the house of representatives shall be judge of the returns, elections, and qualifications of its members." Article 34 provides that "the senate shall be final judges of the elections, returns, and qualifications of their own members." No one would claim that the use of the word "final" in the last article renders the determination of the title of one of its members by the senate more binding than a similar finding by the house in regard to the title of one of its members. The result in either case is a final adjudication of the facts:

"Each branch [of the city councils] shall be the final judge of the election and qualification of its members, and if any election is contested shall have the same powers to ascertain the facts as the city convention have in regard to the election of mayor." P. S., *c.* 48, *s.* 11. If the word final had been omitted, it would have been difficult to distinguish between the power of each branch of a city government under this section and the power of the house under Art. 21. There are authorities that maintain such a distinction (*People* v. *Hall*, 80 N. Y. 117, 120–123; *Commonwealth* v. *Allen*, 70 Pa. St. 465), but they are based on a rule of construction, and not on the intention of the legislature found as a fact from competent evidence. The rule they are based

upon is, that unless the law conferring power to try election cases on a special tribunal provides expressly or by necessary implication that its action shall be final, the jurisdiction of the higher courts remains, and that of the special tribunal is concurrent, temporary, and subordinate. 1 Dill. Mun. Cor., s. 202. By applying this rule to statutes with much strictness, and applying it to the constitution with much liberality, the phrase, "shall be judge of elections," is made to have a meaning in the constitution it does not have in the statutes. This method of construction cannot be followed where the intent of the law-maker is found by the just weight of competent evidence, and not by arbitrary rules of judicial origin. When the legislature enacts that each branch of a city government shall be the judge of the elections of its members, the inference is that they copied the language from the constitution, understanding that it would mean in the statute what it means in the constitution, and intending that municipal legislative bodies, created, organized, and working on the model of the state legislature, shall have the same powers as judges of the elections of their members. It is also probable that, for reasons of public convenience in the transaction of the affairs of cities, the legislative intention was to establish a special tribunal for the determination of such cases, which would act expeditiously, and without the delays ordinarily incident to judicial procedure. *Peabody v. School Committee*, 115 Mass. 383, 386. If its decisions were open to review in the supreme court, the inconvenience sought to be avoided would be increased, and the legislative purpose would be defeated by a rule of construction. Perhaps the strongest argument against this view is found in the opinion of the court in *People v. Hall*, *supra*. Doubtless the reasoning of that opinion is competent evidence on the question of construction; but it does not counterbalance the reasons suggested for an opposite result.

The statute making each branch of the city councils the final judge of the election of its members proceeds in the same sentence to confer and describe the powers to be employed in the exercise of the general power of trying election contests. "If any election is contested" each branch "shall have the same powers to ascertain the facts as the city convention have in regard to the election of mayor." The convention finds and acts upon the facts, not merely as a returning board or board of canvassers, but also in a judicial capacity. *Gregg v. Goodrich*, *supra*. By a rigorous application of the rule of construction applied in some jurisdictions, it could be held that the jurisdiction of the court on *quo warranto* is not excluded in express terms or by necessary implication. But what is necessary implication? It seems to have been understood to be an implication that is absolutely necessary and unavoidable. But we are aware of no

ground by which a stringent rule of that kind can override the fact of legislative intent proved by competent evidence. The reference made by the legislature to the power of ascertaining the facts, vested in the convention in regard to the election of mayor, is evidence tending to show that the legislature understood the convention was judge of the election of mayor, to the same intents and purposes as each branch of the councils is judge of the elections of its members.

The conflicting authorities upon this subject in other jurisdictions (*People* v. *Hall*, 80 N. Y. 117; *State* v. *Kempf*, 69 Wis. 470, 475; *State* v. *Turner*, 44 Mo. 425; *Commonwealth* v. *Allen*, 70 Pa. St. 465; *Echols* v. *State*, 56 Ala. 131; *Curran* v. *Clayton*, 86 Me. 42; *Commonwealth* v. *Leech*, 44 Pa. St. 332; *Lamb* v. *Lynd*, 44 Pa. St. 336; *State* v. *Marlow*, 15 Ohio St. 114; *State* v. *Common Council*, 33 N. J. Law 111, 114; *Kendell* v. *Camden*, 47 N. J. Law 64; *Peabody* v. *School Committee*, 115 Mass. 383; *People* v. *Metzker*, 47 Cal. 524) do not furnish sufficient reasons to justify the introduction into the settled doctrine of this state relating to statutory construction of an exception in election cases. There is no reason why a contested election should not be governed by the rule applicable to a contested fence, so far as it relates to the conclusiveness of the facts found by the special tribunal authorized to try and decide the case.

This proceeding is an information in the nature of a *quo warranto*, which is the form of action appropriate for the trial of a disputed title to office. It is not the proper form of action for the exercise of the superintending jurisdiction for the correction of errors of law. Whether other persons should be made parties in an action for the correction of such errors, it is not necessary to inquire. As this proceeding cannot be maintained for that purpose, the question is whether the defect in the form of action can be cured by an amendment, and whether such an amendment should be allowed. Amendments in the form of actions are ordinarily allowed only when justice requires such procedure. *Redding* v. *Dodge*, 59 N. H. 98; *Edes* v. *Herrick*, 61 N. H. 60, 61; *Hardy* v. *Nye*, 63 N. H. 612. The facts in this case show that the equitable merits are with the defendant. The number of votes intended for him is greater than the number intended for the relator. The ground upon which the latter seeks to oust the former is, that the construction of the Australian ballot law for which he contends would result in his election, by the rejection of more of the votes intended for the defendant than of those intended for him. However this may be, justice does not require the allowance of an amendment for the purpose of raising the question whether the will of the people can be defeated.

*Information dismissed.*

CARPENTER, J., did not sit: the others concurred.