Hillsborough, }
Oct. 3, 1911. }

### DINSMORE v. MAYOR AND ALDERMEN OF MANCHESTER.

Where a contestant for a municipal office concedes before the board of mayor and aldermen that certain ballots should be counted for his opponent, he cannot assert a contrary claim in a subsequent proceeding to determine his title, in the absence of evidence of fraud or imposition.

Where a ballot cast at a biennial election is marked in a party circle, without cancellation or erasure in that column, and also has a cross opposite the name of a candidate for a given office in another column, it is impossible to determine which candidate was the choice of the voter, and the ballot cannot be counted for either.

Where a petition for a writ of *certiorari* is brought to correct errors in the proceedings of an inferior tribunal, the court is not restricted to an examination of matters apparent upon the record, but may, in the exercise of its superintending power, consider all errors of law affecting the substantial justice of the case, whether disclosed by the record or proved *aliunde*, without regard to the technical designation of the remedy which the party aggrieved has employed for the vindication of his rights.

An error of law committed by a municipal board in the decision of an election contest and shown to have resulted in injustice is correctible by the supreme court, in the exercise of its superintending power over inferior tribunals.

PETITION, for a writ of *certiorari*. Facts found, and case transferred from the January term, 1911, of the superior court, by *Wallace*, C. J.

At the election in November, 1910, the moderator of Ward 8, Manchester, declared one Wenzel elected to the office of alderman. Thereupon the plaintiff petitioned the board of mayor and aldermen, alleging that he received more votes for alderman than Wenzel and that he should be given the office. Several hearings were had upon this petition; and as it appeared that the result depended on an examination of the ballots cast, a recount was had at the office of the secretary of state, which showed that Wenzel had 645 votes and the plaintiff 643, exclusive of five disputed ballots. At a subsequent meeting of the board it was conceded that three of the disputed ballots should be counted for the plaintiff. The other two ballots were substantially alike. In each there was a cross in the circle above the democratic column, in which the plaintiff's name was printed as a candidate for alderman, and a cross opposite Wenzel's name, which was printed in the republican col-

umn as a candidate for the same office, but the plaintiff's name was not erased. The board adopted a resolution finding that three of the five disputed ballots should be counted for the plaintiff and the other two for Wenzel, by which recount Wenzel would have one more vote than the plaintiff. The plaintiff was given leave to withdraw and then filed this petition in the superior court.

The defendants and Wenzel excepted to the reception of any parol evidence descriptive of the disputed ballots and to evidence of the agreement that three of the ballots should be counted for the plaintiff.

*Branch & Branch* (*Oliver W. Branch* orally), for the plaintiff.

*John T. Nixon* and *George A. Wagner* (*Mr. Wagner* orally), for the defendants.

WALKER, J. At a hearing before the board of mayor and aldermen, where this election contest was being considered, it was conceded by all parties concerned, who were present and represented by counsel, that three of the five ballots in dispute were legal ballots for Dinsmore and that the contest in fact related to the effect to be given the other two. Having agreed that three of the disputed ballots should be counted for Dinsmore and having rested his claim to an election upon the interpretation to be given to the other two, Wenzel cannot now insist that he was not bound by that agreement. He waived his right to claim that the three ballots counted for Dinsmore should be counted for him, in the absence of any evidence of fraud or imposition; and an inspection of the ballots does not indicate that such counting was erroneous.

The question therefore relates to the effect to be given to the two ballots in dispute. If they are not counted for either of the contestants and the other three are given to Dinsmore, as upon the facts of the case they must be, Dinsmore received one more vote than Wenzel. The two ballots are substantially alike so far as this contest is concerned. Each has a cross in the circle above the democratic column and a cross in the republican column opposite the name of Wenzel, but in neither case is Dinsmore's name erased in the democratic column. The question of interpretation thus presented is the same that was decided in *Murchie* v. *Clifford, ante,* 99, 103, where it was held that the ballot could not be counted for either party, since it was impossible under the statute to say for

whom the voter intended to vote. The evidence of intention furnished by the ballot was equally consistent with an intention to vote for either candidate; hence the impossibility, as a matter of law, of ascertaining for which one he desired to vote. Upon the authority of that case, it is clear that it was error of law to count the two · ballots in dispute for either of the candidates. It was legally impossible to do so.

But the principal contention on the part of the defendants relates to the form of the proceeding the plaintiff chose to bring for the correction of the error in the proceedings of the board. It is insisted that upon a petition for *certiorari,* in a case like this, the court is limited in its investigation to the record of the clerk of the board; that it cannot consider extrinsic evidence to show that the law has been disregarded or violated by the inferior court whose proceedings are alleged to be erroneous; and that, as the record kept by the clerk of the board contains no description of the two ballots above considered, the court is without power to ascertain the facts or to require a full and complete record of the doings of the board. This argument is largely based upon a narrow conception of the office of the writ of *certiorari,* in accordance with which it has sometimes been said that its office is to bring up the record, so that the court may see if the inferior tribunal had jurisdiction (*State* v. *Thompson,* 2 N. H. 236), and that if that fact appeared affirmatively further investigation of the proceedings was unnecessary and useless. Upon such a view of the law, parol or other evidence that the tribunal, having jurisdiction to determine the matter before it, committed grave errors of law in respect to the rights of the parties would be immaterial. It would be in effect a holding that the inferior court had jurisdiction to disregard plain provisions of the law, provided it had the requisite power to hear the parties and determine the controversy. If the court above could not correct the errors which might be proved, it would be absurd to attempt to prove them. Although some remarks by the court in *Petition of Landaff,* 34 N. H. 163, and *Hayward* v. *Bath,* 35 N. H. 514, give some countenance to that view of the law, it has not been adopted in this state. If errors of law are correctible upon *certiorari* when committed by a subordinate court having jurisdiction of the parties and the subject-matter, it would be a strange refinement of reasoning to hold that it could only do so when the errors were shown by an inspection of the record alone, or that if the record were silent upon that subject, the fact could not be shown

in any other way. In the early case of *Huse* v. *Grimes*, 2 N. H.
208, 210, the court remark that *certiorari* lies "to reverse the doings
of inferior jurisdictions, whose powers are given them by statute,
whose mode of proceeding is unknown to the common law, and who
render their doings effectual, not by a judgment, technically called,
but by orders to be executed in a summary way, such as orders for
the laying out of highways and for the removal of paupers." It is
not confined to jurisdictional matters, but extends to the correc-
tion of all errors of law affecting the substantial justice of the
case, whether disclosed by the record or proved *aliunde*. This
view of the office of the writ is recognized in *Pittsfield* v. *Exeter*,
69 N. H. 336, where the question was which of the two towns was
entitled to certain railroad taxes. The action was assumpsit, which
it was held would not lie, as it involved a collateral attack on the
ruling of the state treasurer. But in reaching that conclusion
the court say (*p.* 338): "Although the law does not give a party
aggrieved by a decision of the state treasurer a right of appeal, as it
does to one aggrieved by a decision of selectmen (P. S., *c.* 59, *s.* 11),
it affords an ample remedy in the writ of *certiorari.*" *Cate* v. *Mar-
tin*, 69 N. H. 610, 613.

But in this state it is unimportant whether the process be called
*certiorari*, or be given some other Latin or English name. If it is
an appropriate and convenient mode of vindicating legal right, it
is perhaps not essential that it should have a technical name. The
superintending power of the court over inferior tribunals does not
depend upon, and is not limited by, technical accuracy of designa-
tion of legal forms of action. The parties' rights in this action do
not depend upon our definition of *certiorari*. They are entitled
under the established practice in this state to the most convenient
procedure for the settlement of their controversy. *Boody* v. *Wat-
son*, 64 N. H. 162.

"The court shall have general superintendence of all courts of
inferior jurisdiction to prevent and correct errors and abuses, and
shall have exclusive authority to issue writs of error, *certiorari*,
and prohibition, and may issue writs of *habeas corpus* and all other
writs and processes to other courts, to corporations, and to individ-
uals." P. S., *c.* 204, *s.* 2. "One object [of this statute] to be accom-
plished is the execution of the laws when they have not provided
specific modes of preventing and correcting the errors and abuses
of courts of inferior jurisdiction." *Boody* v. *Watson, supra*, 171.
"Cumbersome machinery for bringing up the record of the lower

court is unnecessary. *Ableman* v. *Booth*, 21 How. 506, 511, 512, 514, 522, 526. The record can be proved, and found with the other facts of the case, at the trial term, on a petition, as well as in an action of debt, or a writ of entry. . . . On a sufficient petition, the question is whether there is an error correctible by the superintending power, and not whether it was committed by a court of record, or whether it is correctible on a writ of error, writ of false judgment, *certiorari, mandamus, audita querela,* or prohibition." *Boody* v. *Watson, supra,* 173. Since the decision in that case, the doctrine that the extraordinary correctional power of the court for the promotion of justice and the due administration of the law is not hampered or defeated by abstruse technicalities of remedy, but that it is exercised upon simple, ample, convenient, and reasonably expeditious methods of procedure, has not been doubted. *Gage* v. *Gage,* 66 N. H. 282; *Attorney-General* v. *Taggart,* 66 N. H. 362, 369; *Concord etc. R. R.* v. *Railroad,* 67 N. H. 464; *Manchester* v. *Furnald,* 71 N. H. 153, 156; *Sheehan* v. *Mayor and Alderman,* 74 N. H. 445; *Attorney-General* v. *Bartlett,* 75 N. H. 388; *Attorney-General* v. *Duncan, ante,* 11.

As the municipal board in deciding this election controversy exercised judicial powers, and as it committed an error of law affecting the merits of the case and resulting in manifest injustice, its action in that respect is correctible by the exercise of the superintending power of this court over inferior courts (*Sheehan* v. *Mayor and Aldermen, supra*), in the absence of any other specified form of remedy. No reason is perceived why the form of petition adopted by the plaintiff is not adequate.

In proceedings of this character relief is granted, not as a matter of right, but as a matter of discretion, which is governed by the justice of the case. *Petition of Landaff,* 34 N. H. 163, 176; *Boston & Maine R. R.* v. *Folsom,* 46 N. H. 64. If the error of law found to exist does not appear to have affected the result of the proceedings in the lower tribunal, justice would not require its correction by a decree quashing the judgment or order rendered. It is for the petitioner to show not merely that error of law has been committed, but that injustice has been done thereby. Nor will the court quash all the proceedings or make an order broader than is necessary to correct the effect of the error. *Hayward* v. *Bath,* 35 N. H. 514, 527.

In this case, therefore, so much of the record as declares that Wenzel received 647 votes and Dinsmore 646 is quashed, and the record is amended to show that Wenzel received 645 votes and

Dinsmore 646. At the present time no other specific order is necessary, since it is presumed the board will take such further action in the matter as is necessary to finally determine the controversy.

*Exceptions overruled.*

All concurred.