Coös,
Jan. 3, 1922.

ATTORNEY-GENERAL (*ex rel.* WM. E. FOREN) *v.* WOODBURY B.
GATES & a.

Where a town has adopted the provisions of Laws 1897, c. 78, for its annual elections, the procedure prescribed for biennial elections by that statute and its amendments should be followed as far as applicable.

Under the caucus law (Laws 1897, c. 78, s. 2) the Democratic and Republican parties in Gorham were authorized to select their party candidates for town officers at the caucus of Feb. 24, 1921; but there being then no recognized "Citizens" or "Independent" party, no nominees were entitled to be designated on the ballot as the candidates of such parties.

Gorham having adopted the provisions of Laws 1897, c. 78, for its annual elections (but not Laws 1905, c. 93), a joint caucus called on reasonable notice by the chairman of the town committees of the Democratic and Republican parties could establish its own rules of procedure, and unanimously vote that "all candidates elected by the caucus, have their names printed on both the Republican and Democratic ballots." Candidates so chosen, whose names have been duly certified to the town clerk, were the candidates of each party, and their names were properly so placed upon the ballot.

Laws 1905, c. 112, does not require that caucuses for nominees for offices to be filled at an annual town meeting shall be held twenty-eight days prior to the meeting; but they may be held eleven days prior thereto.

An information in the nature of a *quo warranto* will not be amended into a proceeding for a review of the erroneous action of a town clerk in preparing a ballot, where the larger number of votes were intended for the defendants, and the merits of the case are with them.

INFORMATION, in the nature of *quo warranto* praying judgment of ouster against town officers chosen at the annual meeting of Gorham, March, 1921.

March 9, 1915, the town adopted the provisions of chapter 78, Laws 1897, but has not adopted chapter 93, Laws 1905.

The ballot as prepared by the town clerk and used at the meeting contained four columns, three of which were headed respectively, Republican, Democratic, Independent. The Republican and Democratic candidates for the several offices as printed on the ballot were the same, and three of them also appeared as candidates in the Independent column. The name of the relator, Foren, appeared in the Independent column as a candidate for selectman for three years. As to all other offices except library trustee and water commissioner, the Independent column contained no nominations or presented the names contained in the other columns. In former years, it had been the custom for the Republican and Democratic voters of the town to meet separately in caucus at the same time and by conference to agree on the same persons as candidates for the several town offices.

February 21, 1921, a call for a caucus to be held February 24 was posted. This was headed "Citizens' Caucus" and was signed by the chairmen of the Republican and Democratic town committees. When the meeting opened it was stated that it was called as a joint caucus of both parties. After discussion as to whether the two parties should meet in separate rooms, it was agreed without dissent to go ahead together, the meeting voting unanimously "that all candidates elected by the caucus, have their names printed on both the Republican and Democratic ballots." A list of candidates was chosen and certified to the town clerk with the vote of the caucus as to the printing of the names. The same day a caucus of "The Independent voters of Gorham" was held, at which a list of candidates was adopted which with the exception of those who declined the nomination was certified to the town clerk and printed on the ballot under the heading "Independent." No votes had at any previous election been cast at Gorham under the name Independent party. Before election, a committee chosen at the Independent caucus protested in writing against printing in two columns the names of the candidates chosen at the other caucus. No objection was made because of the date of holding the caucus. At the meeting, the ballot was fully explained to the voters, none of whom was deceived or misled by its form. The relator, Foren, had 139 votes for selectman for three years. His opponent received 170 votes in the Republican column, 128 in the Democratic and two votes in the blank column, his name being written in. All the other candidates

in the Republican and Democratic columns received a majority of the votes cast. Upon the ground that the relator showed no title to the office of selectman the court ordered the bill dismissed, unless as matter of law the whole election was void. Heard and transferred by *Sawyer, J.,* from the April term, 1921, of the superior court.

*Jesse F. Libby* (by brief and orally), for the plaintiff.

*Alfred R. Evans* and *Drew, Shurtleff, Oakes & Hinkley* (*Mr. Oakes* orally), for the defendants.

PARSONS, C. J. The relator objects to the legality of the ballots used at the last annual election in Gorham upon two grounds, (1) because the candidates agreed upon at the so-called Citizens' caucus were printed in two columns, one headed Republican and the other Democratic, instead of in one column which should have been headed, as he claims, Citizens, and (2) because the caucus was held less than twenty-eight days before election.

The town had adopted the provisions of c. 78, Laws of 1897, for its annual elections. The procedure prescribed for biennial elections by that statute and its amendments should have been followed at the election so far as they were applicable. Laws 1897, c. 78, s. 8. Under that law, parties casting at least three *per centum* of the entire vote of the state given in for governor at the preceding biennial election, are authorized to choose candidates by a caucus of legal voters. *Ib.,* s. 2. Whether this provision is applied literally, or the total vote upon which the percentage is reckoned is restricted to Gorham, the Democratic and Republican parties of the town are by the statute authorized to select candidates for town officers by a caucus of legal voters. Prior to the holding of the caucuses in Gorham, February 24, 1921, there was no recognized "Citizens'" or "Independent" party in the state, or in Gorham. Neither party cast any votes for governor at the preceding biennial election, or for any candidate at any election in Gorham. Consequently the town clerk would have erred had he printed the nominees of the joint Republican and Democratic caucus under the heading "Citizens" as he did err in placing the names of the nominees of the "Independent" party upon the ballot. As the town had not adopted c. 93, Laws 1905, the provisions of that act as to calling town caucuses and the procedure thereat are inapplicable. The caucus called on reasonable notice was necessarily authorized to establish its own rules of procedure. Although the posted notice of

the meeting was headed "Citizens' Caucus" the call was signed by the chairmen of the town committees of both parties. When the meeting opened it was stated that it was called as a joint caucus of the two parties. Previously it had been the custom of the two parties to meet in different rooms at the same time and by conference to agree on the same persons as candidates for the several offices. Under such procedure each nominee would be the candidate of each party and his name would necessarily be placed on the ticket as a candidate of each party, for there is no rule of law which prohibits one from being presented as a candidate by more than one party. On this occasion the voters of the two parties, so assembled without dissent, agreed to go ahead together. It was then unanimously voted "that all candidates elected by the caucus, have their names printed on both the Republican and Democratic ballots." Candidates were then chosen and their names, with the condition attached to their selection, duly certified to the town clerk. From these facts it could be found that each party in caucus assembled chose the several candidates as nominees of the party and hence their names were properly placed on the ballot.

The relator's second objection, if valid, is also decisive against his right to have his name placed on the ballot. The contention that the caucuses should have been held twenty-eight days before election is based upon an amendment to s. 4, c. 78, Laws 1897, adopted in 1905. Laws 1905, c. 112. The ballot law of 1891 and 1897 substituted an official ballot for the ballots hitherto privately prepared. For biennial elections the duty of preparing this ballot was imposed upon the secretary of state. The preparation of such ballot for use throughout the state involves much labor and detail and requires considerable time. Accordingly it was provided by section 6 of chapter 78 of the Laws of 1897: "Certificates of nomination and nomination papers shall be filed with the secretary of state as follows: Thirty days prior to the day of election in case of candidates to be voted for by the voters of the entire state, sixteen days in case of nominations made by wards and cities and twenty-three days in case of all other nominations." "All other nominations," as written, plainly refers to officers voted for at biennial elections because no others go upon the ballot. There could be no necessity for allowing town or city clerks so much time in which to make up the ballot for local elections. Accordingly, in section 8, by which towns were authorized to adopt the provisions of the act "so far as they are applicable to town . . . elections," it is provided that "the time for filing certificates of nomi-

nation and nomination papers shall be at least six days prior to the day of election." In other words, the act provides that section 6 should not apply to town elections as to the filing of nominations and the words "all other nominations" used in the section do not include officers to be voted for in other than biennial meetings.

Chapter 112, Laws 1905, amended *s*. 4, *c*. 78, Laws of 1897, which when enacted contained no reference to caucuses, to read as follows: "Sect. 4. Certificates of nominations made in accordance with the provisions of sections 2 and 3 of this act, shall contain the name and residence of each candidate, the office for which he is nominated, and the political principles or party he represents, and shall be signed by the chairman and clerk of the caucus or convention, and when practicable such certificates of nomination shall be signed by each candidate, but the absence of the signature of a candidate shall not invalidate a certificate of nomination. Any caucus or convention wherein nominations are made of candidates to be voted for by the voters of the entire state shall be held, at least, thirty-five days prior to the day of election; wherein nominations are made of candidates to be voted for by the voters of cities and wards, at least, twenty-one days prior to the day of election, and in all other cases, at least twenty-eight days prior to the day of election."

It is argued that "in all other cases" nominees for town officers are included. If they are within the letter of the law, it is very plain they are not within the intention of the legislature and hence not within the meaning of the law. *Opinion of the Justices*, 66 N. H. 629, 655. Sections 2 and 3, to which section 4 refers, relate only to officers "chosen at biennial elections." It is plain the matter in mind in drafting the amendment was the holding of caucuses for the choice of candidates to be voted for at biennial elections. .

. But if the amendment is read in connection with section 6 providing the times for filing nominations with the secretary of state, the matter added to section 4 in 1905 is readily seen to pertain to that section rather than to *s*. 4 which originally related only to the form of certificates of nominations.

A comparison of the new matter added in 1905 with section 6 shows that the date assigned for the caucus for each class of officers is in each instance five days greater than that within which nomination papers must be filed for the same class of officers. The amendment of 1905 could have been written only by one who had the provisions of section 6 in mind. In that section, as has already been seen, "in case of all other nominations" does not by the terms of *c*. 78 include

officers elected at other than biennial meetings. It is not probable the legislature in the substantially identical expression "in all other cases" in the amending act intended to include such officers. The amendment related to and is founded upon provisions relating to biennial elections, which were expressly excluded from application to annual elections. No reason appears for giving more extensive application to the amendment than to the matter to which it is an addition. The purpose of defining the time within which caucuses should be held appears to have been to make certain that the certificates of caucus action could be seasonably filed as required by law. If it had been thought necessary to legislate as to town caucuses, the rule applied to caucuses for biennial elections would have required them to be held eleven instead of twenty-eight days prior to election. It is to be noted that no penalty is attached to a failure to hold a caucus the required number of days before election. The secretary of state is not required or authorized to refuse to accept a certificate of nomination duly filed upon the ground that the caucus was held too late, especially if no objection is made. See *s.* 9, *Ib.* It appears that the local construction of the statute had been against the relator's contention as to the time of holding the caucuses for the annual town meeting. It is thought such has been the general understanding. But regardless of this consideration, which is doubtless of little weight and might not be sustained upon thorough inquiry, it is clear it was not intended in 1905 to require caucuses for nominees for offices to be filled at annual town meetings to be held twenty-eight days prior to the meeting. The objections of the relator are without foundation.

These questions have been considered although not actually presented by the case. A board of ballot commissioners is provided for final decision of "all questions arising in case of nominations." Laws 1897, *c.* 78, *s.* 9. Whether their jurisdiction extends to questions arising upon town elections may not be entirely clear. If it does, the relator's objection or that of the "Independent party of Gorham" should have been made to them. If it does not, the duty of making up the ballot imposed upon the town clerk carries with it authority to decide all questions of law and fact involved subject to the superintending power of the court.

An information in the nature of a *quo warranto* is the form of action appropriate for the trial of title to office. It is not the proper form of action for the exercise of the superintending jurisdiction for the correction of errors of law. If justice required, the proceeding might

be amended to one proper for a review of the action of the clerk in making up the ballot. But even if it were probable that on such amendment and trial the action of the clerk would be found erroneous so as to affect the result of the election, the amendment would not be granted. The merits of the case are with the defendants. The larger number of votes were intended for them. The ground upon which the relator proceeds in this case is error of law in the town clerk in placing certain names on the ballot. Whatever view might be taken of this question, justice would not require an amendment for the purpose of raising the question whether the will of the people can be defeated. *Attorney-General* v. *Sands,* 68 N. H. 54, 58.

*Petition dismissed.*

All concurred.