Oct. 6, 1942. } No. 3377.

GERMAIN E. CLOUTIER *& a. doing business as* GREEN ACRES
FARM DAIRY

*v.*

STATE MILK CONTROL BOARD.

*William H. Craig*, (by brief and orally), for the plaintiffs.

*Frank R. Kenison*, Attorney-General, and *Ernest R. D'Amours*, Assistant Attorney-General (*Mr. Kenison* orally), for the defendant.

*Jack Garrett Scott*, General Counsel, office of (Federal) Defence Transportation, and *Walter L. Baumgartner*, special Assistant General Counsel, (both of Washington, D. C.), by permission filed a brief for Joseph B. Eastman, Director of (Federal) Defence Transportation, as an *amicus curiae*.

ALLEN, C. J.    I.    As a procedural issue, the defendant advances the claim that the plaintiffs' only right to attack the order of the board is by appeal as provided by statute (R. L., c. 414), the last section of the chapter (s. 22) barring the maintenance of any proceeding in any court other than the appeal, to "set aside, enjoin the enforcement of, or otherwise review or impeach any order of the commission, except as otherwise specially provided." The milk control act (R. L., c. 196, s. 16) brings appeals from the orders of the board established by it within the scope of the chapter (c. 414) above cited.

It is doubtful whether the defendant, in its desire to have the main issue in the case decided, is insistent upon its position but as the question is one of the court's authority to act upon the main issue except upon an appeal, it is considered regardless of a possible waiver by the defendant.

In reasonable construction of the provisions of the milk control act relating to appeals, the right of appeal is not considered an exclusive method to obtain relief from invalid orders, in respect to questions of jurisdiction or of law on which the orders are based. A general review, with *de novo* treatment of the orders, may only be had under the procedure provided. "When the legislature intend a court's decision of questions of fact shall be revisable by another tribunal on a new trial of the whole case whether there is error of law or not, an appeal is ordinarily provided." *Boody* v. *Watson*, 64 N. H. 162, 186, and cases cited. And it is a corollary that the terms for taking an appeal must be followed.

It is the constitutional mandate that questions of law belong to

the judiciary for final determination, as a necessary deduction of the required separation of the legislative, executive and judicial powers of government (Const., Part I, *Art.* 37). It follows that legislation cannot bar or restrict this power of the judiciary, and the courts have inherent power, through appropriate process, to act upon and decide such questions, if they are not of a strictly political nature. While the legislature may adopt a procedural course for the exercise of the right that questions of law may be finally decided by the courts, the legislation is valid and to be adopted only so far as it may be held reasonable and consonant with due process. The right to apply to the courts for relief from illegality may not be unduly abridged.

It is assumed that the legislature has acted in the light of this limitation of its power. Any intention that the appellate procedure marked out by the milk control act should be exclusive in respect to questions of law is not found. As above appears, the provisions for appeal explicitly permit other courses to obtain relief which are "specially provided" and it is not assumed that the procedure was intended to entrench upon the statute (P. L., *c.* 315, *s.* 2; Rev. Laws, *c.* 369, *s.* 2) conferring in broad language jurisdiction upon this court. The act became law while the revision of statute law by Public Laws was in force and prior to the revision by Revised Laws, which readopts Public Laws in this respect with no change or limitation. The readoption of Public Laws by Revised Laws in identical language left undiminished the statutory jurisdiction of this court, by fair implication. While the appellate procedure may be ample to prevent and correct errors and abuses of any nature, the saving clause for other procedure of a special character and the general provision therefor in the investiture of jurisdiction upon this court evince a purpose not to narrow the jurisdiction.

The jurisdiction conferred expressly grants the right to issue writs of certiorari, and as said in *Dinsmore* v. *Mayor and Aldermen,* 76 N. H. 187, 191: "Since the decision in that case [of *Boody* v. *Watson,* 64 N. H. 162], the doctrine that the extraordinary correctional power of the court for the promotion of justice and the due administration of the law is not hampered or defeated by abstruse technicalities of remedy, but that it is exercised upon simple, ample, convenient, and reasonably expeditious methods of procedure has not been doubted." The jurisdiction, as is intended by the statute, may be original.

But issues of fact passed upon by an administrative body are not generally reviewable by the courts unless the legislature has pro-

vided therefor by expressly giving a right of review by appeal. *Boody* v. *Watson*, 64 N. H. 162, 164, 186; *Attorney-General* v. *Sands*, 68 N. H. 54, 55; *Manchester* v. *Furnald*, 71 N. H. 153, 157, 158; *Attorney-General* v. *Littlefield*, 78 N. H. 185, 189, 190. The judicial quality inherent in a finding or verdict by such a body does not necessarily signify a justiciable inquiry. The constitutional division of governmental powers contemplates some overlapping and duality in the division as a matter of practical and essential expediency.

Certiorari may not be invoked to review issues of fact, except upon the inquiry of law whether the finding or verdict could reasonably be made. 5 R. C. L. 251; 14 C. J. S. 311; 10 Am. Jur. 537. Whether the fact finding tribunal has acted illegally in respect to jurisdiction, authority or observance of the law, is the scope of inquiry which the proceeding may cover. And it is not granted if other remedy is available, *Grand Trunk Railway Co.* v. *Berlin*, 68 N. H. 168, 170. While here other remedy, by appeal, was available, it is now too late to take advantage of it, and it does not appear nor is it claimed that the plaintiffs waived the right of appeal or are chargeable with laches for not exercising it.

The petition for certiorari is accordingly held to be an available and appropriate method for attack upon any questions of law on which the board's order depends. The questions thus arising are whether the order is one in respect to which the board had authority to act, and if so, whether it can be found to be based upon reasonable conclusions of facts found.

II. The delegation of authority to the board to regulate the distribution of milk is of undoubted constitutional validity. In *Opinion of the Justices*, 88 N. H. 497, proposed regulation of the milk industry was thought to be proper in the exercise of the protective power and delegable by the legislature to an administrative board. While particular attention was not given to the subject of distribution of the milk supply, the act includes it within the scope of the authority delegated. The purposes of the act are to secure sufficient quantity as well as proper quality. A sufficient quantity is "an adequate daily production" (s. 5 of the act). As appears in the prescribed duties of the board (s. 5 of the act): "To the end that no part of the state shall lose or have impaired its reasonable requirements of milk of a proper quality, the board shall have power to supervise, regulate and control the production, distribution, and sale of milk within the state." And it is a truism that maintenance of distribution and security of delivery are reasonable needs of public health.

The case does not transfer the record of the evidence before the board on which the order was based. Ordinarily this would preclude factual consideration of the validity of the order. But as it is claimed that the situation and facts of which judicial notice may be taken prevent a conclusion of reasonableness, whatever the evidence may have been, the issue of the sufficiency of any evidence to justify the order is considered.

Reasonable service in the retail delivery of milk by motor vehicles or any rubber tired vehicles is under grave threat by reason of the restrictions here in force of the use of gasolene and of the replacement and renovation of rubber tires. Aside from the doubtful adequacy of the allowance of gasolene, the prospect that for the duration of the war a rubber tired vehicle used for retail milk delivery may be run only while its tires are in condition to permit, presents a difficulty of distribution of impending alarm. National orders in curtailment of the replacement and renovation of tires for vehicles in civilian use are subject to change from time to time, and it is reasonable to forecast that the curtailment will become increasingly rigorous for a period measured by the uncertain continuance of the war.

Adjustment between less wear of tires and frequency of distribution is a regulation of the supply of milk reaching customers. Lessened use lengthens the time in which distribution by rubber tired vehicles may be made, while general change to other means of delivery is not readily and presently to be made. Conservation of such tires, with less use of gasolene, helps to protect the public in receiving its milk for household use, and the order for it is considered a reasonable exercise of the authority of the board. While the act possibly contemplates distribution to customers by daily deliveries, it was enacted prior to the existing conditions and needs of war without foresight of them. But it would be a technical construction in defiance of the broad purposes of the act to hold that the board may make no orders of distribution other than for daily deliveries. Daily deliveries being likely in the long run to cause greater hardship and distress than less frequent delivery, an order forbidding them is in conformity with the act. The principle that legislation may apply to new and unforeseen situations if they come within its spirit and tenor (*State* v. *Richardson, ante,* 178 and cases cited) is properly invoked. An impossible or impractical detail of administration does not defeat a general prescription unless the terms require it to be a condition for valid action. Clearly an

order for continued daily delivery by rubber tired vehicles would be unreasonable. Moreover, "daily production" (s. 5 of the act) is not necessarily daily distribution, and a "daily average" of sales is not necessarily an amount of daily sales, and nowhere in the act is any express provision for daily deliveries found.

That deliveries other than of milk are not within the application of the order, is beside the point. The order relates only to the distribution of milk, and the board has no authority over other distributions. So far as the case goes, conservation of gasolene and rubber tires is necessary, not to meet the general emergency produced by their shortage, but for its bearing on the supply of milk available for delivery. That some may do things which others may not, is due and proper discrimination if the reasons for classification are not arbitrary but fairly serve the public interest. *Opinion of the Justices*, 85 N. H. 562, 564, and cases cited. It is not arbitrary that a subject of public interest be regulated while another of equal importance may not be. Nor can it be said as matter of law that wholesale deliveries of milk must be as restricted in frequency as retail deliveries. It cannot be asserted judicially that the wear and tear of trucks used in wholesale deliveries is not comparably far less than that of trucks engaged in retail deliveries. In the absence of known facts, an unreasonable classification is not demonstrated. *Welch Company* v. *State*, 89 N. H. 428.

As to deliveries by means of transportation other than motor vehicles or vehicles equipped with rubber tires, any order forbidding daily distribution is deemed null and void. An order must relate to the purpose which the act seeks to accomplish and must be of a character which the act permits. While "fair . . . practices" (s. 5 of the act) may be required, no legislation may restrict, or authorize the restriction of, competition and free enterprise to the point of absolute control. *Opinion of the Justices*, 88 N. H. 497, 499. An order that a competitor may not take advantage of his methods and opportunities merely because those with whom he competes do not employ his methods or have his opportunities, is beyond the scope of regulative power.

The line between regulation and management may not be in all cases clearly and readily drawn. Regulation is an exercise of control while management is an exercise of conduct, in carrying on a business. Necessarily control of conduct is in analysis conduct itself. The real test is not of words, but whether the control of conduct is an exercise of the protective power of the state and promotive of

the general welfare. The defendant's claim that a total ban on daily deliveries of milk will aid in enforcement of the ban on the use of motor and other rubber tired vehicles in making deliveries seems no more than an assertion. No explanation how aid will be thereby furnished has been offered, and it is difficult to see how daily deliveries in other manner or by other means will hamper investigation and the imposition of penalties or other enforcement of orders in respect to the use of vehicles clearly subject to regulation. Prevention of too frequent deliveries in a forbidden manner is not thought to be aided in any measurable degree by imposing the same limits of frequency on deliveries not in themselves harmful. The inroad upon individual rights is too great to justify so drastic an order. *State* v. *Paille*, 90 N. H. 347, 353. At best, the balance of private over public interest (*Woolf* v. *Fuller*, 87 N. H. 64, 68, 69) is too overwhelming to permit a ban on such deliveries.

The partial invalidity of the order is ineffective to nullify the order as a whole. *Dinsmore* v. *Mayor and Aldermen*, 76 N. H. 187, 191.

In result, the petition is granted in respect to deliveries otherwise than by motor vehicles or any rubber tired vehicles, and is otherwise dismissed.

*Petition granted as limited.*

All concurred.