**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0596, <u>New Hampshire Municipal Association & a. v. New Hampshire Department of State & a.</u>, the court on June 22, 2015, issued the following order:**

Having considered the briefs, oral argument, and the record on appeal, the court concludes that a formal written opinion is unnecessary in this case. The defendants, the New Hampshire Department of State and the New Hampshire Bureau of Securities Regulation (Bureau), appeal an order of the Superior Court (<u>McNamara</u>, J.) denying their motion to dismiss the plaintiffs' petition for declaratory judgment. We affirm.

The pertinent facts are as follows. The plaintiffs are the New Hampshire Municipal Association, Inc. (NHMA), a voluntary corporation, and its several subsidiaries. On August 16, 2012, the department of state issued a final order directing NHMA, formerly known as Local Government Center, Inc., to organize its two pooled management programs into a form that provides each program with an independent board and its own set of written bylaws. Accordingly, NHMA sought to reorganize its two public sector risk pools from limited liability companies to not-for-profit voluntary corporations, <u>see</u> RSA ch. 292 (2010 & Supp. 2014), believing that doing so would achieve the requirements of the final order.

On August 22, 2013, the Bureau informed NHMA by letter that, among other things, the reorganization was inconsistent with the language of RSA 292:7 (2010). The letter focused on the statutory language that "[a]ny corporation now or hereafter organized or registered in accordance with the provisions of this chapter, and any existing corporation which may have been so organized or registered, may . . . merge with or acquire any other corporation formed pursuant to this chapter." RSA 292:7. Nonetheless, on September 1, 2013, NHMA and its subsidiaries reorganized as not-for-profit corporations.

On September 2, 2013, the plaintiffs filed a complaint against the defendants seeking a declaratory judgment. The plaintiffs sought "expedited relief to provide certainty and security that the mechanisms Plaintiffs used to conduct a reorganization on September 1, 2013 . . . of their two public sector risk pools . . . is permissible under New Hampshire law." The plaintiffs alleged that in the August 22 letter, the defendants "announced a novel and overly restrictive interpretation of RSA 292:7, stating that voluntary corporations may

only merge with or acquire other voluntary corporations, and that the transfer of substantially all the assets and liabilities of a New Hampshire limited liability company to a New Hampshire voluntary corporation is prohibited by RSA 292:7."

The defendants moved to dismiss the complaint on the grounds that: (1) the trial court's exercise of jurisdiction is a violation of the Separation of Powers Clause of the State Constitution; (2) the plaintiffs have circumvented the exclusive administrative process; (3) reliance on the doctrine of primary jurisdiction is improper as the doctrine is inapplicable under the facts and circumstances of this case; (4) failure to defer to the secretary of state constitutes an unsustainable exercise of discretion; and (5) the suit is barred by sovereign immunity. Following a hearing, the trial court denied the defendants' motion. The trial court thereafter granted the plaintiffs' subsequent summary judgment motion, concluding that the plaintiffs' reorganization does not violate RSA 292:7. The defendants did not appeal the court's summary judgment order.

"The denial of a motion to dismiss is proper if the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." Bohan v. Ritzo, 141 N.H. 210, 212 (1996) (quotation omitted); see Jay Edwards, Inc. v. Baker, 130 N.H. 41, 44 (1987) (court must determine whether the facts as pled are sufficient under the law to constitute a cause of action). "Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant, but rather a judicial declaration as to the existence and effect of a relation between him and the defendant." Benson v. N.H. Ins. Guaranty Assoc., 151 N.H. 590, 593 (2004). "The remedy of declaratory judgment affords relief from uncertainty and insecurity created by a doubt as to rights, status or legal relations existing between the parties." Id. at 593-94.

On appeal, the defendants argue that the trial court erred in declining to dismiss the plaintiffs' petition "because the instant action is barred by sovereign immunity, and therefore, the court lacked subject matter jurisdiction." The defendants assert that "[a]bsent the prescription of terms on which the state agrees to be sued or the presence of a constitutional issue, a declaratory judgment action is improper." The plaintiffs argue that sovereign immunity does not bar a party "from requesting a New Hampshire court to determine pure questions of law and, in particular, a request to interpret the language of a statute." The plaintiffs assert that because they seek to resolve a question about the interpretation and application of RSA 292:7, and because "[i]nterpretation of that statute is within the sole and exclusive jurisdiction of the judicial branch," sovereign immunity does not bar the petition.

Under the doctrine of sovereign immunity, the State cannot be sued in its own courts without its consent. Tilton v. Dougherty, 126 N.H. 294, 297 (1985). The public policy considerations underlying sovereign immunity are

2

twofold: "the protection of the public against profligate encroachment on the public treasury, and the need for the orderly administration of government, which, in the absence of immunity, would be disrupted if the state could be sued at the instance of every citizen." In re Estate of Raduazo, 148 N.H. 687, 692 (2002) (quotation omitted).

We reject the defendants' argument that a declaratory judgment action "may not be maintained against the state absent a constitutional violation or legislative consent." As the trial court correctly stated in its order, "New Hampshire courts have routinely entertained declaratory judgment actions against the State absent a constitutional question at issue." See, e.g., Boy's Club of Nashua, Inc. v. Attorney General, 122 N.H. 325, 326 (1982) (interlocutory transfer seeking determination whether attorney general's interpretation of statutory definition of a raffle was correct); Linlee Enterprises, Inc. v. State, 122 N.H. 455, 456 (1982) (declaratory judgment action testing State's interpretation that statute prohibits all sales of unvented space heaters); New Hampshire Ins. Co. v. Duvall, 115 N.H. 215, 216-17 (1975) (requesting declaratory ruling that State's interpretation of workers' compensation statute was invalid). The court also recognized that because "[n]o judgment this Court could enter would result in damage to the State's fisc," sovereign immunity does not bar the plaintiffs' action.

The defendants' reliance upon Lorenz v. New Hampshire Administrative Office of the Courts, 152 N.H. 632 (2005), is misplaced. The plaintiffs in Lorenz, seeking to prevent the defendants from eliminating their employment, argued that the State had waived its immunity by enacting RSA 491:8 (1997), which confers jurisdiction upon the superior court to enter judgment against the State "founded upon any express or implied contract with the state." Lorenz, 152 N.H. at 633-35 (quotation omitted). However, because that statute is limited to suits seeking money damages for breach of contract, we concluded that the plaintiffs' action seeking equitable relief was outside the "limited waiver of immunity established by RSA 491:8." Id. at 635. Contrary to the defendants' assertion, Lorenz does not support their argument that because the plaintiffs did not challenge the constitutionality of the actions taken by the defendants, their action was barred by sovereign immunity in the absence of specific legislative consent.

The defendants next argue that RSA 5-B:4-a (2013) grants the executive branch, through the department of state, exclusive authority to decide this matter, and, therefore, the trial court's exercise of jurisdiction constitutes a violation of the separation of powers doctrine. See N.H. CONST. pt. I, art. 37. The trial court rejected this argument, reasoning that "a plain reading of RSA 5-B:4-a does not suggest that the Secretary of State has exclusive authority to determine pure questions of law as it pertains to RSA 29[2]:7, an entirely separate statute from RSA 5-B."

Pursuant to RSA 5-B:4-a, the secretary of state has exclusive authority and jurisdiction to "bring administrative actions to enforce . . . chapter [5-B]" and to "investigate and impose penalties for violations of [chapter 5-B]," and also has "all powers specifically granted or reasonably implied in order to perform the substantive responsibilities imposed" by chapter 5-B. RSA 5-B:4-a, I(a)-(b); RSA 5-B:4-a, II. However, the issue raised in the plaintiffs' petition for declaratory judgment is whether "the mechanisms Plaintiffs used to conduct a reorganization . . . of their two public sector risk pools, from limited liability companies to not-for-profit RSA ch. 292 voluntary corporations, is permissible under New Hampshire law." This "pure question of law" is squarely within the inherent power of the judiciary to determine, thus raising no issue of separation of powers. See New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 386 (2011) (separation of powers is violated only when one branch of government usurps an essential power of another); Cloutier v. State Milk Control Board, 92 N.H. 199, 201-02 (1942) ("[Q]uestions of law belong to the judiciary for final determination, as a necessary deduction of the required separation of the legislative, executive and judicial powers of government.").

The defendants assert, however, that even assuming the trial court had jurisdiction over this action, the court's failure to defer to the secretary of state was an unsustainable exercise of discretion. They argue that pursuant to the doctrine of primary jurisdiction, the trial court should have deferred because the defendants have an "in-depth understanding of the extensive regulatory effort" and "[t]he trial court's intervention on this one piece of a much larger regulatory puzzle diverted [the parties] from the task at hand." They also assert that deference "promotes uniformity in the interpretation of law regarding pooled risk management programs" and "eliminates the slippery slope that parties may go down if they are allowed to disengage from the administrative process."

"The doctrine of primary jurisdiction provides that a court will refrain from exercising its concurrent jurisdiction to decide a question until it has first been decided by the specialized administrative agency that also has jurisdiction to decide it." Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 371 (2012) (quotation omitted).

> [The doctrine] is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. It applies to claims that contain some issue within the special competence of an administrative agency. Thus, under the primary jurisdiction doctrine, courts, even though they could decide, will in fact not decide a controversy involving a question within the jurisdiction of an administrative tribunal until after that tribunal has rendered its decision.

Id. (quotation omitted).  "Where, however, the issue or issues involve purely questions of law, the matter will not be referred to an agency."  Id. (quotation, brackets, and ellipsis omitted).  We review the trial court's decision under an unsustainable exercise of discretion standard.  Id.

The plaintiffs' declaratory judgment action presents purely a question of law involving statutory interpretation of voluntary corporations under RSA chapter 292, an issue not within the defendants' regulatory authority under RSA chapter 5-B.  Furthermore, not only did the defendants not take any official enforcement action against the plaintiffs to which the trial court could defer, the record supports that the defendants had no plans to do so.  As the trial court stated, in noting the "troubling" procedural posture of this case,

> after first taking the position the Court has no jurisdiction to resolve Plaintiffs' concerns, the Defendants have admitted the Court would have jurisdiction to address those concerns if a Final Order were entered and it moved for enforcement - but they have now decided to cut off all communication with Plaintiffs so that, as a practical matter, no resolution amenable to judicial review is available to them.

Under the circumstances presented here, we hold that the trial court sustainably exercised its discretion to exercise its jurisdiction.

Finally, the defendants argue that the petition was not ripe, asserting that because the August 22 letter expressed only a tentative opinion about the legality of the plaintiffs' proposed reorganization, it did not constitute a genuine threat or prejudice to the plaintiffs' interests, and therefore the trial court should have dismissed the petition.  A declaratory judgment action "is not dependent upon proof of a wrong committed by one party against the other."  Radkay v. Confalone, 133 N.H. 294, 296-97 (1990).  Rather, such an action "is designed to prevent not only threatened wrongs, but also uncertainty and misunderstandings in the assertion of rights."  Beaudoin v. State, 113 N.H. 559, 562 (1973).

The plaintiffs allege in their petition that "[h]undreds of towns, cities, school districts, and counties, as well as over 75,000 individuals, rely on [NHMA subsidiaries] to manage and cover their risks" and that "[t]he corporate legal status of these entities must be decided in order to remove the uncertainty of the current dispute with the Department of State."  The plaintiffs further allege that "the taxpayers in the member communities, as well as the public employees, retirees, and families that rely on coverage from [the subsidiaries] need security in knowing that their claims will be covered because these entities are legally in compliance with State law" and that "[t]he Department of State's interpretation of RSA 292:7 not only puts into question the stability of Plaintiffs' public sector risk pools, but also the entire healthcare

delivery system through which Plaintiffs' covered individuals access their healthcare."

The trial court found that "the Plaintiffs have a form of reorganization that the Bureau unofficially disagrees with but has not taken any official action with regard to it. Nonetheless, the Defendants' unofficial letter and intransigence has created uncertainty and . . . are causing instability in the Plaintiffs' public sector risk pools." The plaintiffs' allegations are sufficient to establish that the dispute between the parties has caused uncertainty about the plaintiffs' corporate status and, accordingly, we conclude that the trial court did not err in denying the defendants' motion to dismiss the petition for declaratory judgment.

Affirmed.

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.

**Eileen Fox,**
**Clerk**

6