Jan. 5, }
  1915. }

## BOSTON & MAINE RAILROAD *v.* STATE.

An appeal from an order or decision of the public service commission, taken under chapter 145, Laws of 1913, transfers to the supreme court the entire matter involved, except as the scope of the proceeding may be limited by the statute which grants the appeal.

Since the enactment of chapter 145, Laws of 1913, the public service commission are not named as defendants in an appeal from their orders or decisions, and such proceedings should be entitled as against the parties adverse to the appellant.

Railroad rates which have been filed with the public service commission are not legal rates until they have received the approval of that board.

A railroad rate which is confiscatory cannot be enforced; and upon a petition to the public service commission for leave to increase charges, evidence that the existing rate is not compensatory is competent.

As an appellate tribunal to the public service commission, the supreme court cannot confer upon that board any authority not expressly or inferentially given by statute, nor do any act with respect to the subject-matter of an appeal which the commission might not properly have done in the first instance.

APPEAL, from an order of the public service commission, made September 22, 1914, requiring the plaintiffs to issue 500-mile mileage books at the rate of two cents per mile and to keep them on sale.

*Streeter, Demond, Woodworth & Sulloway (Mr. Streeter* orally), for the plaintiffs.

*James P. Tuttle,* attorney-general (by brief and orally), for the state.

PARSONS, C. J.   The proceeding, an appeal from a decision and order of the public service commission, is brought under paragraph (d) of section 22, chapter 164, Laws of 1911, which with certain limitations and under conditions later to be considered permits an "appeal by petition to the supreme court." This provision was enacted as an amendment to the act of 1911, by section 18, chapter 145, Laws of 1913. Supp. P. S. 356.

"An appeal is a continuation of the original suit, for the purpose of obtaining a new trial, . . . by which the previous verdict is entirely set aside and the case is to be heard anew like an original action and as if no judgment had been rendered in the court

below; . . . and the judgment in the appellate court is a distinct and original judgment." *Bickford* v. *Franconia*, 73 N. H. 194, 195. In providing for an appeal instead of a mere review of questions of law, it must be inferred that the legislature intended to transfer to the court the entire question involved in the matter appealed, to be there determined by an original judgment, except as the appeal may be limited by special provisions of the law by which it is given.

The act creating the public service commission (Laws 1911, *c.* 164) provided in section 17 for a proceeding in the nature of an appeal by a bill in equity brought in the superior court against the public service commission as defendants. That section is twice expressly repealed by the amendments of 1913. Laws 1913, *c.* 145, *s.* 18 (*s.* 20 (a), *p.* 676); *Ib.*, *s.* 19, *p.* 680. The present appeal is "by petition to the supreme court," without mention of the parties defendant, except that "any person or corporation whose rights may be directly affected by said appeal may appear and become a party, or the court may order such persons and corporations to be joined as parties as justice may require." Laws 1913, *c.* 145, *s.* 18 (*s.* 22 (d), *p.* 677); Supp. P. S. 356. There is also a provision for notice to those who were parties to the proceeding before the commission, or are ordered by the court to be joined as parties. *Ib.* Upon the filing of an appeal, the clerk of the supreme court is directed to issue an order of notice requiring the commission to file with the court a certified copy of the record of the proceeding, together with such of the evidence as may be specified by any party in interest or deemed proper to be certified by the commission, with originals or copies of all exhibits. *Ib.* Upon compliance with this order, the connection of the commission with the appeal is ended. The impropriety of calling upon the commission to appear as defendants, presumably to defend their action in the matter appealed from, is manifest from other provisions of the statute which require the recommittal of the matter to them in certain circumstances for further findings and rulings. Whether this was considered reason for the change or not (Laws 1911, *c.* 164, *s.* 2 (h); Supp. P. S. 337), the statute no longer requires the commission to be named as appellees or defendants, and such proceedings should be entitled as against the parties adverse to the petitioner; in this case, the state.

A brief reference to legislation in existence when the public service commission was created will aid in understanding the questions now involved.

"The proprietors of every railroad shall furnish to all persons reasonable and equal terms, facilities, and accommodations for the transportation of persons and property over their railroad." P. S., c. 160, s. 1. "The proprietors of every railroad shall cause to be posted in their depots a table of prices for the conveyance of persons and property. . . . The rates shall be the same for all persons . . . between the same points, and shall not be raised until after thirty days' notice posted as aforesaid." *Ib.*, s. 3. "Season and mileage tickets may be sold at reduced rates." *Ib.*, s. 4.

"They [the railroad commissioners] shall fix, upon the petition of any party interested, the charges to be made by the proprietors of railroads within the state for the transportation of persons and freight, and shall change the same from time to time as the public good shall require, subject to existing limitations. The rates so fixed shall be binding upon the proprietors." P. S., c. 155, s. 13; Laws 1893, c. 5, s. 2.

"All steam railroads operating a passenger service in this state which at the date of the passage of this act do not issue one thousand mile mileage books good for the transportation of the bearer over all their lines in this state, shall thereafter issue such books at the rate of two cents a mile, and keep them on sale at its ticket offices in this state." Laws 1909, c. 107, s. 1.

Chapter 164 of the Laws of 1911 abolished the board of railroad commissioners and created in its place the public service commission. In place of the provisions of section 3, chapter 160, Public Statutes, requiring the posting of a table of prices, the law of 1911 contained the following provision: "Every railroad corporation . . . shall file with the commission, and shall print and keep open to public inspection, schedules showing the rates, fares, charges, and prices for the transportation of passengers and property, or for any service rendered or to be rendered, in such places, within such time, and in such form and with such detail as the commission may order" (Laws 1911, c. 164, s. 7 (a); Supp. P. S. 341); with the further provision: "Unless the commission otherwise orders, no change shall be made in any rate, fare, charge, or price, which shall have been filed or published by a railroad corporation . . . in compliance with the requirements of this section, except after thirty days' notice to the commission and such notice to the public as the commission within ten days after receipt of the notice aforesaid shall direct." *Ib.*, s. 7 (b).

The plaintiffs, having complied with the statute and filed the appropriate schedules showing the rate, charge, or price of 500-mile mileage books to be two cents per mile, afterward, on August 31, 1914, filed supplemental tariffs showing changes of rates which the railroad proposed to put into effect October 1, 1914, the only change material here being one making the price to be charged for 500-mile mileage books $11.25 instead of $10, or at the rate of two and a quarter cents per mile instead of two cents.

Paragraph (c) of section 7, just quoted, provides: "Whenever any schedule shall be filed with the commission under paragraph (b) of this section stating new and higher rates, fares, charges, or prices, which the railroad corporation . . . purposes to put into force, the commission may investigate the reasonableness of such proposed rates, fares, charges, or prices." After investigation, or after hearing upon notice to the plaintiffs, the commission made the following "Order No. 383":

"Ordered, that the rate of two cents per mile is fixed as the lawful maximum mileage ·[book?] rate upon all steam railroads operated in the state of New Hampshire, for the transportation of persons between points within said state; and it is

"Further ordered, that said Boston & Maine Railroad . . . shall . . . observe said rate and put and keep the same in force, and shall keep on sale at said rate at the ticket offices . . . in this state 500-mile mileage books, good for the transportation of the bearer over their respective lines in New Hampshire, except over the Mount Washington Railway, or between Bethlehem Junction and Bethlehem, Bethlehem Junction and the Profile House, or between Fabyan's and the base of Mount Washington."

Chapter 92, Laws of 1913, amended chapter 107, Laws of 1909, so as to read as follows: "All steam railroads operating a passenger service in this state shall hereafter issue five hundred mile mileage books at the rate of two cents a mile, good for the transportation of the bearer over all their steam railroad lines in this state, and keep them on sale at its ticket offices in this state. Provided, that nothing in this act contained shall compel the issuance of such mileage books for transportation over the Mount Washington Railway, or between Bethlehem Junction and Bethlehem, Bethlehem Junction and the Profile House, or between Fabyan's and the base of Mount Washington."

It is thus apparent that by their order the commission have attempted to reënact the statute, or to order the plaintiffs to obey it.

The plaintiffs in due form appealed from this order, assigning as the ground of their preliminary motion for rehearing that the statute cited was unconstitutional because in violation of the fourteenth amendment of the federal constitution and the constitution of this state.

The violation of the United States constitution was the only ground urged in argument, the case *Lake Shore etc. Ry.* v. *Smith*, 173 U. S. 684, being relied upon as conclusively establishing the contention. This case has perhaps been understood as arbitrarily deciding that any statute requiring the sale of mileage tickets is void. *Beardsley* v. *Railroad*, 162 N. Y. 230; *Commonwealth* v. *Railway*, 106 Va. 61,—7 L. R. A. N. S. 1086; *State* v. *Bonneval*, 128 La. 902; *State* v. *Railway*, 17 N. D. 370. But in the recent case *State* v. *Railroad, ante*, 425, this court did not so construe the decision. No light is furnished by the action of the federal judges, to whom the plaintiffs applied for an injunction. In the opinion filed in that proceeding, which has been handed the court since the decision in the Maine Central case, it is said: "We express no opinion as to the scope or decisiveness of the supreme court decision." *Boston & Maine R. R.* v. *Niles*, 218 Fed. Rep. 944, 948. Where the federal question is one of doubt, it has sometimes been thought wise for the state court to decide adversely to the right claimed, in order that the question might be definitely settled by the only court which could make a final decision of it. *State* v. *National Banks*, 75 N. H. 27, 33; *State* v. *Collins*, 70 N. H. 218; *State* v. *Collins*, 67 N. H. 540. But the decision in the Maine Central case was not placed upon that ground. That the statute, without reference to the reasonableness of the rate, could constitute a taking of the railroad's property without due process of law and a discrimination against purchasers of other tickets, it seemed necessary that there should appear to have been some other larger rate which the railroad had a right to charge and other ticket purchasers could be compelled to pay. This is the reasoning of the authority relied upon, as it is understood; and its logic is not such that the court were impelled to astute reasoning to extend the rule of the case to one not within the plain terms of the decision.

The plaintiffs here do not contest the view taken in the recent case before this court, but seek to bring the present within the federal case by establishing that there was in existence a tariff of legally established rates over their road larger than the mileage-book

rate.   But so far, as to the road as a whole the proof is wanting.   By
the Public Statutes, as quoted at the opening of the opinion, they
were required to make reasonable and equal terms for transporta-
tion.   P. S., c. 160, s. 1.   If the consolidation statutes of 1883 and
1889 and their reënactment in the Public Statutes prohibited the
plaintiffs charging more for transportation than was charged over
portions of their road as now combined (*State* v. *Railroad,* 75 N. H.
327;  *Clough* v. *Railroad, ante,* 222), there was no finding that the
rates then charged were reasonable and no engagement by the state
preserving the right to charge the existing rates.   The acts them-
selves looked to a reduction of rates, and the restriction to reason-
able terms remained.   The rates filed with the commission, which
were substantially all the rates in existence when the act of 1913
was passed, not having been passed upon by the commission, were
voluntary, not statutory rates.

It is claimed that action taken under chapter 106, Laws of 1913,
made the existing rates legal, statutory rates.   That chapter was a
scheme for the adjustment of the controversy between the state
and the railroad over rates for freights and fares growing out of the
consolidation statutes which have been referred to.   The substance
of the scheme was the preparation of rate schedules by the commis-
sion and their acceptance and adoption by the plaintiffs.   Upon
such acceptance, evidenced by the prescribed formalities, the sched-
ules prepared by the commission were to become the maximum
rates.   It is understood that the schedules were not accepted in the
manner required by the statute.   If not, the schedules are not
established rates.   If such acceptance was made, such rates "con-
tinue in force as the maximum schedules for fares and freights until
modified by authority of the legislature."   Laws 1913, c. 106,
s. 6.   It appears from the record that in the schedules delivered to the
railroad under chapter 106, passenger rates were left substantially
unchanged, meaning, as the statement is understood, that the
schedules delivered were substantially identical with those filed by
the railroad and continued the two-cent rate which it is now sought
to change.   The reference to chapter 106, Laws of 1913, appears to
result in this: If its provisions have been carried out, the two-cent
rate for 500-mile mileage books is established by agreement
of the plaintiffs, not to be altered except by action of the legislature;
if not so adopted, the schedules are tentative proposals merely, of no
force whatever.

It is further contended that by an order effective March 1, 1913

(No. 130), the public service commission, acting under section 5, chapter 196, Laws of 1911, established three cents per mile as the maximum rate for transportation over certain portions of the plaintiffs' road, amounting to 112 miles in all. Without stopping to investigate the legislation under which this action was taken, and conceding that thereby by legislative authority three cents per mile was established as the legal maximum over that 112 miles before the mileage-book act was passed, the reasoning in the federal cases relied upon would seem to justify the plaintiffs in refusing to sell mileage books at the two-cent rate, good over these lines. The statute exempts certain lines. If there are others which should not have been omitted from the exception, it is not necessary to destroy the whole statute to preserve the plaintiffs' constitutional rights. The total result of the discussion, therefore, amounts to this: a modification of the order, so as to include within the excepted lines the 112 miles upon which higher rates have been established, may be required.

The plaintiffs, in their motion for rehearing, state the ground upon which they claimed that the statute and order are in violation of the constitution of the United States and of this state, as follows: "That said statute and order require your petitioner to issue and sell mileage books good for passenger transportation between the great majority of its stations in this state at rates materially lower than the regular passenger fares lawfully established and in force between said stations and sanctioned by the commission." The plaintiffs fail, not because their claim as to the law is held to be incorrect, but because, except as to the 112 miles, they do not show regular passenger rates lawfully established at rates higher than the mileage-book rate. They fail, not on the law, but on the facts.

Counsel now make the claim that the two-cent rate is not compensatory. It is objected by the state that this ground was not set forth in the motion for rehearing, and that under the statute it cannot be "given any consideration by the court, unless the court for good cause shown shall allow the appellant to specify additional grounds." Laws 1913, *c.* 145, *s.* 18 (*s.* 22 (a), (b), *p.* 677); Supp. P. S. 353. The question whether the rate was compensatory was raised before the commission, who rejected the evidence. It is conceded by the state that a confiscatory rate cannot stand; hence the evidence must be competent. The error, therefore, which might have been specified as a ground for rehearing was the refusal to hear this evidence. The plaintiffs have leave to file a motion

setting forth the additional grounds upon which they now desire to be heard and the facts relied upon to constitute good cause.    The parties can then be heard on the latter question and as to the proper procedure in case the motion is granted.

It appears from the report accompanying the order that the order fixing the two-cent rate was not made because, acting under the power conferred by section 11 (a) of the act, the commission determined that rate to be just and reasonable, but because, construing chapter 92, Laws of 1913, fixing the rate for mileage ticket books, in connection with the last clause of section 11 (a), "that the commission shall not allow an increase above any rate prescribed or limited by statute," it was held that the commission had no power to allow a mileage-book rate greater than two cents per mile, and the order was made because it was understood the commission had power to order the plaintiffs to obey the statute.    The latter question is as to jurisdiction of the subject-matter.    Whether a tribunal has such jurisdiction is a question always open.   *Burgess* v. *Burgess,* 71 N. H. 293; *Weeks* v. *Fowler,* 71 N. H. 221.    Whatever power the supreme court has as a court of general common-law jurisdiction, or as a court with general superintending power over other courts or bodies, its powers as an appellate tribunal to the public service commission are those given by the statute.    It cannot authorize the commission to do anything the commission are not expressly or by inference authorized by the statute to do.    The court, as such appellate tribunal, cannot do anything which the commission might not in the first instance properly do.

When the commission are of opinion that a railroad corporation is "about to fail or omit to do anything required of it by law," the commission are given authority to "lay the facts before the attorney-general, and to direct him immediately to begin an action in the name of the state of New Hampshire, praying for appropriate relief by *mandamus,* or injunction, or otherwise."    Laws 1911, c. 164, s. 16 (a); Supp. P. S. 353.    The commission having before them evidence tending to prove that the plaintiffs intended to violate the terms of the mileage-book statute, *i. e.,* to omit to issue and keep on sale mileage books as therein directed, was their power limited to laying the facts before the attorney-general and directing prosecution, or had the commission power to enforce the statute by their order, and thereby to add the penalty for violation of an order of the commission (Laws 1911, c. 164, s. 18; Supp. P. S., *p.* 357, s. 23) to that prescribed by the mileage-book act?

As to the first question suggested, the construction adopted is within the letter of the act. But "a thing which is within the letter of a statute is not within the statute unless it be within the intention of the makers." *Stanyan* v. *Peterborough*, 69 N. H. 372, 373; *Opinion of the Justices*, 66 N. H. 629, 657; Bac. Abr., Statute (I) 5. The limitation upon the power of the commission to allow an increase of rates is found in the Public Statutes, as a limitation of the power of the board of railroad commissioners to fix rates. P. S., c. 155, s. 13. Section 4, chapter 164, Laws of 1911, provides: "All charges made or demanded by any railroad corporation for the transportation of persons or property . . . shall be just and reasonable and not more than is allowed by law." This seems to establish two classes of railroad rates: those that are just and reasonable, and those that are prescribed by statute. The same situation is apparently recognized in section 11 (a) of the act, as amended and reënacted by section 10, chapter 145, Laws of 1913, whereby the commission are authorized to determine the "just and reasonable or lawful rates." Although the plaintiffs are common carriers engaged in a public service, they are entitled to compensation for service performed. Authority for requiring them to render service for less than fair compensation, if it exists, must be found in some preceding stipulation of the parties. It must be rested in contract, not upon the police power of the state. A possible explanation of the statute and guide to the legislative meaning may be found in the history of the controversy arising under the consolidation statutes of 1883 and 1889, before referred to. Upon the question whether certain statutory provisions are unconstitutional, the preliminary question open is the meaning of the statutes.

It has been suggested that the plaintiffs were issuing 1,000-mile mileage books when the law of 1909 (*c.* 107) was passed, and hence it is urged that from the terms of the act it is apparent the act was not aimed at them. It is common knowledge that when the act of 1913 was passed the plaintiffs were issuing 500-mile mileage books in accordance with its terms and had been doing so for years. Neither act was therefore aimed at the plaintiffs, but the purpose was to secure from other railroads the accommodation voluntarily furnished by the plaintiffs over their lines. The fact that such rate was voluntarily made over substantially all the steam railroad mileage in the state furnished some evidence for the legislative judgment that the rate was compensatory. Evidence has been offered by the plaintiffs since the argument, showing that at the

time of the enactment of the act of 1913 the plaintiffs' average charge voluntarily made for all traffic was very slightly over two cents per mile—substantially that sum.    If changes in circumstances have made the rate insufficient, or if the plaintiffs were mistaken and have misled the legislature, no reason is perceived why relief should not first be sought, when there is opportunity to do so, from the original rate-making power.    Whether a statute of this character, if valid when enacted, can in the absence of any application for legislative relief be made unconstitutional, void from its inception, because of events occurring since its passage, may be a troublesome question if it is reached.

Argument is invited upon this question and upon the two propositions: (1) Do the statutes prohibit the commission from allowing a just and reasonable rate per mile for 500-mile mileage books? Apparently, the amount of the rate is the only question in controversy, since the plaintiffs filed a rate for such books.    (2) If the commission are so prohibited, have they power to order the plaintiffs to obey the law?    These questions, with the one the plaintiffs now seek to raise, have not been presented, perhaps because in the view taken of the constitutional question it was thought the situation might be saved without the delay of an application to the legislature or of a trial of the question whether the rate was just and reasonable, compensatory; and with the view that relief would be promptly obtained, no application appears to have been made to the commission for a temporary suspension of the two-cent mileage-book rate, under section 11 (i), chapter 164, Laws of 1911, added by section 12, chapter 145, Laws of 1913.    Supp. P. S. 348.

If the case is as urgent as represented, this section authorizes temporary relief until the legal questions raised can be thoroughly examined, or permanent relief had by application to the legislature soon to be in session.    The only decree that could as far as the discussion has gone be now made disposing of the appeal in any part would be one modifying the order so as to include within its exception the 112 miles upon which a three-cent rate has been established. Assuming such order would be of no practical importance, the case is left upon the docket for such further action as the parties may desire to take.

*Postponed.*

All concurred.