Hillsborough, } No. 4128.
Mar. 3, 1953.

MARY G. RICHARDSON & *a.*

*v.*

BEATRICE BEATTIE & *a.*

*Upton, Sanders & Upton, McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Frederic K. Upton* and *Mr. Brown* orally), for the plaintiffs.

*Gordon M. Tiffany*, Attorney General, and *Maurice M. Blodgett*, Deputy Attorney General (both orally), for the defendants.

GOODNOW, J.   The issues involved require a determination of the authority granted to the State Board of Health by R. L., *c.* 166, *ss.* 14, 15. Section 14 provides that "whenever [certain persons] have reason to believe that a public water . . . is being contaminated or is in danger of contamination . . . they may petition the

state board of health to investigate the case, and to establish such regulations as the board may deem necessary for the protection of the said supply against any pollution that in its judgment would endanger the public health." Section 15 provides that "the state board shall, upon such petition or its own motion, after due investigation, make such regulations as it may deem best to protect the said supply against any dangerous contamination." The section also contains provisions concerning the time and method of putting into force any regulations made and establishes the duties of enforcement officers and their powers in relation thereto. These sections were first enacted by Laws of 1899, c. 57, ss. 1 and 2 in their present form, so far as this case is concerned except that in s. 15, the words "upon such petition or its own motion" were inserted in 1926 by P. L., c. 141, s. 15.

The defendants take the view that each of these sections grants to the State Board of Health a separate authority to make regulations, s. 14 permitting regulations aimed at the broad purpose of improving the quality of the water supply through provisions "against any pollution that in its judgment would endanger the public health" and s. 15 limiting the authority to regulations deemed best by the board to provide protection "against any dangerous contamination." The two sections were adopted as a single act in 1899, and must be read together. Section 14 provides a method by which the powers conferred upon the board by section 15 may be invoked. The relief to be sought by such a petition is the establishment of regulations protecting against pollution or contamination which would, if allowed to continue, be dangerous to public health (s. 14); and the authority granted to the board is confined to the promulgation of such regulations as will protect against such a threatened or existing danger (s. 15). The summary nature of the powers conferred upon the board has already been recognized by this court. *Willis* v. *Wilkins*, 92 N. H. 400, 402. It may act without hearing and upon its own inspection and knowledge even if such action may seriously impair private as well as public rights. Such a power is designed for use in meeting the need for immediate action in protecting the public health. The board's authority to use this power is contingent upon the existence of dangerous contamination of the supply or the threat thereof. *Conway* v. *Water Resources Board*, 89 N. H. 346, 349, cited by the defendants in support of their claim of a broad grant of authority to the Board of Health did not involve the statute now in question.

By its motion to dismiss at the close of the plaintiffs' case, the defendants raised the issue of the nature and extent of the Trial Court's review of action taken by the Board of Health. In the case at bar, the board presumably acted upon its own investigation. It held no hearings and made no findings of fact. In the proceedings before the Trial Court the regulation standing alone was in issue, the plaintiffs having challenged its reasonableness. The defendants assert that within the permitted area of review limited to the question of reasonableness of the regulation, the Trial Court is not authorized to find facts but merely to determine whether, on the basis of evidence presented before the court, the board reached a conclusion which could be found to have some basis for its support. Such a limitation would require that with the introduction of any believable evidence in support of it, the regulation must be upheld without regard to probabilities, reasonableness or invasion of private rights.

The argument misconceives the nature of the administrative action under review. In adopting the regulations, the board was not called upon to act in a judicial capacity, and its reviewable proceedings consist of the regulation alone. It could, and did, act without notice or hearing. *Willis* v. *Wilkins*, 92 N. H. 400. It made no findings, and its action represented only an *ex parte* determination that the circumstances required protective measures of the sort authorized by the Legislature. Having concluded that they did, it made such regulations as it deemed "best to protect the . . . supply against any dangerous contamination" (*s*. 15).

Whether or not dangerous contamination existed or was threatened, is a question of fact. Whether the regulations adopted were reasonable in the light of the facts is a question of law which the plaintiffs are entitled to have judicially determined. Individual rights should not be overridden without judicial review. Those of the plaintiffs who are owners of cottages on the shore of Back Pond and who use the pond for recreational purposes have "rights incidental to the enjoyment of public rights . . . which are more extensive than those of one who is only a member of the public." *Hoban* v. *Bucklin*, 88 N. H. 73, 87, 88. In passing upon the reasonableness of legislation, whether a statute (*Dederick* v. *Smith*, 88 N. H. 63, 68), a municipal ordinance (*State* v. *Paille*, 90 N. H. 347, 352) or a regulation promulgated under legislative authority (*Willis* v. *Wilkins*, 92 N. H. 400, 405, and cases cited), the court is required to balance the importance of the public benefit which

is sought to be promoted against the seriousness of the restriction of private right sought to be imposed. If a police measure "is directed to a public interest of minor concern, while imposing serious restrictions in regulation or bar of guaranteed rights to accomplish the interest, it tends to show its unreasonableness. On the other hand, the more insistent the public need . . . the more may private rights be restricted." *Woolf* v. *Fuller*, 87 N. H. 64, 68, 69. In reviewing the regulation here in question, the Trial Court was required first to find "the extent or character of the expediency" (*Woolf* v. *Fuller, supra,* 69) in order to determine its weight in the scales of reasonableness. It was therefore essential that the Trial Court find such facts as were necessary to a determination of whether the regulation was clearly unreasonable. Cases cited by the defendants where the issue was an alleged improper delegation of primary legislative powers (*Firemen's Insurance Co.* v. *Houle*, 96 N. H. 30; *Conway* v. *Water Resources Board*, 89 N. H. 346) are not in point. Other cases have been cited in support of the general proposition that issues of fact determined by an administrative board are not reviewable by the court unless there is a statutory provision therefor. *Covey* v. *Robinson*, 84 N. H. 439; *Aetna Casualty Co.* v. *Sullivan*, 83 N. H. 426. This principle cannot be doubted but it is not applicable in the case at bar where findings by the Trial Court are essential to the determination of the issues which are within the scope of its review.

The public need for the regulation barring all human activity on Back Pond rests upon two principal premises asserted by the defendants. The first of these is that tests of water taken at the low-pressure station over a ten year period indicate such a sufficient and increasing presence of coliform bacteria at that intake as to constitute a threat to the public health through contamination of the water supply. The second premise is that the source of these bacteria is human activity on Back Pond. It is undisputed that of two hundred forty-seven samples taken at the low-pressure station during this period there have been eleven instances of a coliform bacterial content in excess of the number recognized as the maximum for water requiring simple chlorination. It also appears that of an equal number of samples taken at the high-pressure station in Back Pond itself only one showed an excessive count. Based on these tests, the opinions of the experts were in complete disagreement as to the existence or threat of a dangerous contamination.

The Trial Court found that the tests did not indicate any danger

to persons consuming the water if it was adequately chlorinated and further found that such chlorination was now being given to the water. It also found that the tests did not indicate any increase in coliform bacterial count which would presage a dangerous pollution or threat of it and specifically found "no dangerous contamination or threat of dangerous contamination of the Manchester water supply." As to the source of such excessive coliform counts as were recorded at the low-pressure station, the Court found that the high counts at that intake were "probably due to the conditions existing in the area between the low-pressure station and Back Pond."

So far as the seriousness of the restriction of private rights which the regulation would impose, the Court found that those plaintiffs who were shore owners would lose recreational privileges and that the beneficial use of their properties would be impaired with a resulting depreciation of about fifty per cent in values.

The Trial Court having determined in effect that the regulation was directed to a situation of no danger to the public health, while prohibiting activities not causally connected with such evidence of pollution as did appear and at the same time imposing serious restrictions on the private rights of the owners of shore properties, concluded that the regulation was unreasonable.

While the evidence warranted the Trial Court's finding that there was no dangerous contamination or threat of it, there was likewise evidence to support a finding by the board that such a condition did exist. On the other hand, if dangerous contamination or a threat thereof exists, there must be a reasonable connection between the regulation and the ends mentioned in the statute, namely protection against the contamination. *State* v. *Ramseyer*, 73 N. H. 31, 36; *State* v. *Dickstein*, 89 N. H. 546. The prohibition of all human activity in Back Pond as a means of preventing contamination, at best only remotely connected with the activity prohibited, appears to us to be "clearly unreasonable." *Carter* v. *Craig*, 77 N. H. 200, 206. It cannot be doubted on the evidence that the private rights of the owners of shore properties would be substantially restricted by the regulation. Under these circumstances, the conclusion of the Trial Court that the regulation was unreasonable is a correct one.

Of the defendants' requests to the denial of which exception was taken, two were granted in part and the others denied. In neither instance did the evidence compel the finding as requested, insofar

as it was denied, and the defendants take nothing by their exceptions. *Perkins* v. *Company*, 93 N. H. 459, 461. The requests for findings to the granting of which the defendants excepted were supported by sufficient evidence and their determination on the conflicting evidence rested with the Trial Court. Insofar as they involved rulings of law, they raised no issues beyond those already dealt with previously in this opinion.

*Exceptions overruled.*

All concurred.