Merrimack,
No. 4246.

H. P. Hood & Sons, Inc. *v.* Pierre A. Boucher *& a.*

Argued  November 4, 1953.
Decided December 21, 1953.

*Paul A. Rinden* and *George P. Cofran* (*Mr. Cofran* orally), for the plaintiff.

*Gordon M. Tiffany,* city solicitor and *Richard F. Upton* (*Mr. Upton* orally), for the defendants.

BLANDIN, J.   The defendant board claims that the case has become moot and it appears desirable to consider this question before dealing with the basic issue of whether the Trial Court erred in holding that the decision of the board was contrary to law. It has been well said that "No word has been more frequently misused than 'moot' " (53 Harv. L. Rev. 628), and further that the question of mootness is not subject to rigid rules but "seems, rather, to be regarded as one of convenience and discretion." *Id.,* 629.   This view accords with what we believe to be the better authority and also with the underlying philosophy of our law. *Lewellyn* v. *Follansbee,* 94 N. H. 111, 114.   It is therefore necessary in order to determine whether the discretionary power to issue *mandamus* should be exercised (see *Maclay* v. *Fuller,* 96 N. H. 326) to examine the record before us.   It appears that the plaintiff through no fault of its own has been delayed in procuring a hearing and decision by the board.   However, there is nothing in the statute under which the license is sought (R. L., *c.* 194, *s.* 4) which requires that an application be heard or a license issued before June 1st of any year.   If the plaintiff is entitled to a license it can be issued at any time to run to June 1st of the next year.   In none of the New Hampshire cases cited by the defendant as authority for the proposition that this matter is moot was both the right sought and the regulation which denied it continuing as it is here.   If a license is to be issued now the board will not be prejudiced since the plaintiff can furnish it an up-to-date list of producers and such other timely information as may be reasonably required.   A matter of vital public interest is at stake

(*Whitney* v. *Watson*, 85 N. H. 238), where the issues have been thoroughly tried and we believe in all the circumstances the question is not moot. It follows the defendants' exception on this score is overruled.

This brings us to the problem of whether the Trial Court erroneously granted a trial *de novo* as the defendant claims. The ordinary rule is that a court may not grant a new trial and find facts when a board acts in a quasi-judicial capacity, but its orders must stand unless they are unreasonable and therefore unlawful. *Sinkevich* v. *Nashua*, 97 N. H. 262, 265; *Whitney* v. *Watson, supra,* 241. However, this board does not seem to have so acted, but rather to have merely set up a regulation in the nature of a procedural rule. There are no findings here such as the board was authorized to make under R. L., *c.* 194, *s.* 4, insuring the quality of the plaintiff's milk, but rather the board says that the cost of inspection would be too great and therefore it denied the application. In this situation the question whether such a regulation was "reasonable in the light of the facts is a question of law which the [plaintiff is] entitled to have judicially determined. Individual rights should not be overridden without judicial review." *Richardson* v. *Beattie,* 98 N. H. 71, 75. Since the board failed to make any findings on the matters entrusted to its jurisdiction by *s.* 4, it was obviously necessary for the Trial Court to do so as pointed out in the *Richardson case* (*supra* 76) in order to decide whether the regulation could stand. The defendants accordingly take nothing by their exception on the ground that a trial *de novo* was granted by the Superior Court.

In considering the question whether the regulation of the board was unreasonable as the Court has held, it is important to realize that this ruling effected a complete and drastic denial of the plaintiff's right to engage in the legitimate business of selling milk in the city of Concord. This is significant because in deciding the correctness of the Trial Court's determination, the benefit to the public which the board sought to confer by its action must be weighed against the seriousness of the injury to the plaintiff. *Woolf* v. *Fuller,* 87 N. H. 64. Without reviewing all the facts found by the Court in detail, or those undisputed on the record, it is of the utmost importance to note that no question is raised by the defendants as to the "purity of the milk" sold by the plaintiff. It is also undisputed that its bottling and pasteurizing plant where it processes all milk which it proposes to sell in Concord

is inspected by and meets the requirements of the State Board of Health and that the milk from this plant is inspected and approved by the cities of Manchester and Nashua. It is also sold to the State Sanitarium at Pembroke where tuberculosis patients are treated, Grenier Field, and the Veterans' Hospital in Manchester. While these facts and the tests employed by the plaintiff itself, which are more rigid than those required by the defendants (*c.* 35, *s.* 21, Revised Ordinances of the City of Concord, 1949) to determine the purity of its milk are not binding upon the board, they are nevertheless vital circumstances which the Trial Court properly considered and found to furnish, together with other facts, "reasonable assurance" that the cows producing the milk were "healthy and . . . properly . . . cared for," and that the plaintiff understood "the care and handling" of milk, as required by *c.* 35, *s.* 26, Revised Ordinances of the City of Concord, 1949. Again, the milk inspector for the defendant board said that not all the milk sold in Concord is pasteurized and that *this was "the reason for more frequent inspections."* (Emphasis supplied). Furthermore, he conceded that on occasion milk from thirty-five farms in Vermont, only one of which had been inspected, is permitted to be sold in the city, since he is *satisfied* because he "checked every producer in the laboratory," of the purity of this milk. Cream from uninspected producers is allowed to be sold in New Hampshire, and we believe it a permissible inference from the record for the Trial Court to find that it is also sold in Concord. It thus appears that the board itself does not consider inspection always essential. Obviously no inspection however exhaustive could be conclusive unless every dairy farm were examined every day because the cleanliness that might be found there on the day of the inspection might be followed by unsanitary conditions on the next day. In other words not only is inspection not always required by the defendants' own practice, but no system of inspection can be more than relatively dependable and this factor must be considered in deciding the reasonableness of the regulation. In all the circumstances it appears that in granting *mandamus* the Court has determined in effect that any possible danger to the public which might come from the sale of the plaintiff's milk is so slight, while the damage to the plaintiff from the denial of its rights is so great, that the board's regulation was unreasonable and therefore unlawful. *Whitney* v. *Watson*, 85 N. H. 238. We consider that on this record the weight of authority and better reasoning sustain this holding.

We do not believe, as the defendants claim, that the Court based its decision on an erroneous consideration of the fact that the board can make no rules relative to the sale of milk imported from Vermont which would restrict interstate commerce (*Dean Milk Co.* v. *Madison*, 340 U. S. 349), but in any event it is well established here that a wrong reason given by a court does not invalidate a correct ruling. *Rau* v. *Stores*, 97 N. H. 490, 494.

The very recent case of *Otto Milk Co.* v. *Rose*, (Pa.) 99 A. (2d) 467, is on all fours with our situation and squarely supports the result reached by the Trial Court. This opinion, after an exhaustive review of the authorities which we need not repeat here, concludes that the additional cost and labor of inspecting producers and pasteurizing plants, together with the fact that the defendant city there already had an adequate supply of milk, were insufficient reasons for upholding a refusal to allow the plaintiff to sell milk and that such an action was unlawful. We believe this decision represents good law and good sense.

Assuming, as the defendants contend, that since the license fee is fixed at two dollars by statute (R. L., c. 194, s. 4) it would not be possible for the board to charge this plaintiff or other milk sellers anything further for the cost of inspection, yet, as was pointed out in the *Otto* case, there are a number of reasonable alternatives to the virtual embargo which has been placed on the sale of the plaintiff's milk. First, the board could arrange with some of the numerous purchasers of this milk such as the cities of Manchester or Nashua for reports of their inspections of the dairies which produce it. This is not as claimed a surrender of the board's quasi-judicial function, it is merely a matter of whether it may reasonably rely on inspectors for other cities who are licensed by the State Health Department (R. L., c. 194, s. 11), and trusted by it for the very purpose of making proper examinations and reliable reports of the purity of the plaintiff's milk supply. The inspection of dairies, which is not required by statute and is merely a means of insuring the continuing quality of the milk, and the testing of milk are separate acts. It is only the former which requires traveling to any appreciable extent and the acceptance of reports from competent inspectors other than its own is not forbidden by section 4. Moreover, this would greatly diminish the expense which is the sole reason given by the defendants for denying the plaintiff a license. In this connection, since as conceded in the defendants' supplemental brief, the board is satisfied

to accept the report of the local inspectors of those cities as to the purity of the plaintiff's Grade A milk, which must pass the highest tests of all, no valid reason appears why it should not be willing to accept the report of the same inspectors as to milk of lower grades. The continuing purity of the milk as contemplated by section 4 (*Whitney* v. *Watson,* 85 N. H. 238) could be assured at reasonable cost by tests in the city's own laboratory as is done in the case of the milk imported from Vermont. Or again, it could conduct reasonably thorough inspections in the nature of spot checking which should not be impractical or unduly expensive.

In conclusion, it seems that the cost of supervising the plaintiff's facilities for producing and marketing milk need not be excessive. Since the statute does not provide for charging the cost of inspection to an applicant the city must bear the reasonable burden imposed. *Cf. State* v. *Hoyt,* 84 N. H. 38, 41. Furthermore, on this record it appears conclusively that the plaintiff has complied with all the conditions prescribed in the statute. It follows that it is entitled to a license and the defendants' exception to the Court's order is overruled. *Whitney* v. *Watson,* 85 N. H. 238, 243. In so holding we do not wish to be understood as deciding that the matter of expense could not in any circumstances be an important factor, but that in the light of the facts here it cannot justify the action of the board.

This appears to dispose of all the exceptions of merit, and the order is

*Exception overruled.*

All concurred.