Merrimack,
No. 5129.

STATE

*v.*

AARON A. HARKAWAY, *Trustee in Bankruptcy of Karanikas & Sons & a.*

Argued June 5, 1963.
Decided July 9, 1963.

*William Maynard*, Attorney General and *Alexander J. Kalinski*, Assistant Attorney General (*Mr. Kalinski* orally), for the State.

*McLane, Carleton, Graf, Greene & Brown* and *G. Marshall Abbey* (*Mr. Abbey* orally), for Harkaway, trustee and for Hubbard Farms, Inc.

*Velishka & Kozlowski* for Ernest J. Savoie, furnished no brief.

*Harkaway, Ryan & Pappagianis* for Jasper Poultry Farm, furnished no brief.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* for Peerless Insurance Company, furnished no brief.

KENISON, C.J. The purchase, sale and transportation of poultry in this state has been regulated with increasing stringency since 1935. Laws 1935, *c.* 61. The controlling statute requires a license (RSA 344:1 (1)) as follows: "An unlimited license to each person who shall furnish a bond with sufficient surety in an amount to be determined by the commissioner, but not to exceed ten thousand dollars, payable to the state of New Hampshire and conditioned for the faithful performance of all legal obligations incurred in the buying and selling of live poultry the meat or product of which is to be sold or used for food; such bond shall be held by the commissioner to satisfy any court judgment obtained or execution issued against any licensee because of failure to perform such legal obligations . . . ."

The principal issue in this case is whether the proceeds of the statutory bond should be distributed only to New Hampshire poultry producers. This is the nub of the fourth and fifth questions which were transferred by the Superior Court. The legislative history of RSA ch. 344 is not particularly helpful in determining what class of claimants are to be protected by the statutory bond

and no rules and regulations have been issued under RSA 344:12. However the statute is geared to regulating dealers and processors who buy, sell and transport poultry rather than the farmers who raise and produce poultry. *Payne* v. *Kansas*, 248 U. S. 112. This is evident from RSA 344:10 which provides in effect that no license is required of the poultry producer who sells poultry at his own farm or the merchants who sell at their stores. The statute, by no means unique, is directed at protecting the local producer from "fly-by-night" operators who may leave the state with the rustic retaining a "rubber check." *State* v. *Mason*, 94 Utah 501; *Garretson Co.* v. *Robinson*, 178 Wash. 601; Annot. 117 A.L.R. 347, 350. *Cf.* RSA 344:15-18. While there is nothing to preclude the Legislature from protecting nonresident dealers and producers of poultry (*Bozied* v. *Edgerton*, 239 Minn. 277), the provisions of RSA ch. 344 disclose a purpose to protect only resident poultry producers. Annot. 117 A.L.R. 347, 363. The answer to the fourth question is that the proceeds of bond posted by the bankrupt pursuant to RSA 344:1 are to be distributed to poultry producers only. The answer to the fifth question is that distribution of proceeds of the bond is limited to New Hampshire residents only. In this connection it may be noted that nonresidents may apply under the law of their state inasmuch as neighboring states have similar statutes.

The first question transferred is whether the filing of proofs of claim in the Karanikas bankruptcy constitutes an election which bars the claimants from receiving any distribution from the bond proceeds. The answer is no. *Gehlen* v. *Patterson*, 83 N. H. 328; *Stefani* v. *Savings Bank*, 90 N. H. 10. The doctrine of election of remedies is a harsh one which frequently causes injustice and the doctrine has been severely confined and limited in its application in this state. *Ricker* v. *Mathews*, 94 N. H. 313, 317. The doctrine has no application to this case and does not preclude the claimants from receiving a distribution from the proceeds of the statutory bond.

Questions 2 and 3 may be treated together. The filing and acceptance of a proof of claim in the Karanikas bankruptcy proceedings does not constitute a "judgment" within the meaning of RSA 344:1(1) and the answer to the second question is no. See *Gardner* v. *New Jersey*, 329 U. S. 565. It is apparent from the agreed statement of facts that the "status of the claimants as to whether they are dealers or growers [producers] and as to the state of their residence has not been determined; nor has the

amount of their claims . . . ." Since all claimants are before the court, it can determine the status of each claimant and the amount of each claim and then make the necessary orders for a pro rata distribution of the bond proceeds. This is consistent with the provisions of the bond itself which does not refer to judgments but provides that the principal "shall faithfully perform all legal obligations incurred in the State of New Hampshire in the buying and selling of live poultry . . . ." *Cf.* Annot. 76 A.L.R. 941.

The suggestion of the Presiding Justice in the Superior Court (*Griffith*, J.) that the petition for declaratory judgment be treated as a bill of interpleader is a sound and practical one which finds a precedent in an important but underrated dictum of this court on procedure in New Hampshire generally. The statement in *Dinsmore* v. *Mayor and Aldermen*, 76 N. H. 187, 190 reads as follows: "But in this state it is unimportant whether the process be called *certiorari*, or be given some other Latin or English name. If it is an appropriate and convenient mode of vindicating legal right, it is perhaps not essential that it should have a technical name. The superintending power of the court over inferior tribunals does not depend upon, and is not limited by, technical accuracy of designation of legal forms of action. The parties' rights in this action do not depend upon our definition of *certiorari*. They are entitled under the established practice in this state to the most convenient procedure for the settlement of their controversy." See also, 3 Davis, Administrative Law Treatise, *s.* 24.06, *p.* 426 (1958); *Nashua* v. *Public Utilities Commission*, 101 N. H. 503, 506. As already indicated the Court may then proceed to determine to whom and in what amounts the bond proceeds should be distributed. Since the claims exceed the bond proceeds, it will be necessary to make a pro rata distribution.

*Remanded.*

All concurred.