Personnel Commission
No. 78-168

### JACK E. MELTON, SUPERINTENDENT OF THE LACONIA STATE SCHOOL AND TRAINING CENTER AND AMY PERRY

v.

### THE PERSONNEL COMMISSION OF THE STATE OF NEW HAMPSHIRE AND THE STATE EMPLOYEES' ASSOCIATION AND MARIANNE FIELDS

May 9, 1979

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Edward E. Shumaker, III*, orally), for the plaintiffs.

*Thomas D. Rath*, attorney general (*Steven J. McAuliffe*, attorney, orally), for the defendant Personnel Commission.

*Cleveland, Waters & Bass*, of Concord (*Howard J. Zibel* orally), for the defendants State Employees' Association and Marianne Fields.

BOIS, J.    This is a petition for a writ of certiorari, RSA 490:4 (Supp. 1977). The plaintiffs seek review of a decision by the Personnel Commission of the State of New Hampshire (commission), which interpreted and applied rules of the department of personnel.

Plaintiff Melton, superintendent of the Laconia State School (school) and an appointing authority within the meaning of RSA ch. 98 and the department of personnel rules, interviewed several applicants to fill a new position at the school. Plaintiff Perry, who had recently entered State service, and was classified as a probationary employee, was selected over other qualified candidates who were permanent State employees.

The State Employees' Association (SEA), representing the permanent employees, filed grievances with Superintendent Melton, alleging that a qualified permanent employee should have been selected rather than the better qualified probationary employee. The superintendent denied the grievances on the ground that Amy Perry, "having more skills and aptitude for the position than the other applicants," was the best candidate. The SEA appealed the superintendent's decision to the commission.

A hearing was held on May 25, 1978. The SEA argued that Department of Personnel Rule II, Section 3 mandates that "preference" must be accorded to permanent employees. In pertinent part, the rule reads as follows:

> A vacancy shall be filled whenever possible and reasonable by promotion of a qualified permanent employee from within the department or agency.

> Selection for such promotion shall be based upon capacity for the vacant position, ability as evidenced by past performance, and length of service with the department.

The aggrieved applicants did not testify and SEA offered no evidence other than the job description for the position in question. The commission declined to hear testimony from the plaintiff Perry concerning her qualifications, stating that "[w]e don't question the qualifications of all the applicants and Mrs. Perry, and we feel it is our job to make a decision on whether or not the personnel rule has been followed in this particular instance."

The school introduced testimony of Dr. Vincent Smith, who had interviewed the applicants and had initiated the selection of Amy Perry. The doctor testified at length concerning the duties and responsibilities of the position, the qualities desired in the person to be hired, and all the attendant factors that he considered in reaching his hiring recommendation. He was aware of Rule II, Section 3, and stated that he had selected the "best candidate for the position." Dr. Smith admitted that all the applicants were qualified and that if Mrs. Perry had not applied, the position would have been given to one of the other persons who had applied. He agreed that it would not have been unreasonable to hire one of the other applicants if Amy Perry had not been an applicant and that he thought "it's most reasonable to hire the best qualified candidate for the position and that's the way I interpret that phrase 'possible and reasonable.'"

On May 31, 1978, the commission issued a decision which in pertinent part reads as follows:

> The New Hampshire Personnel Commission, having heard and considered the promotion appeal . . . has unanimously voted that the position . . . presently held by Mrs. Amy Perry be vacated by Mrs. Perry as of June 9, 1978 and that it be filled by the promotion of one of the appellants.

In reaching this decision the Commission finds as follows:

> 1. Section 3, Rule II, "Rules of the Department of Personnel" is quite clear in its statement that "a vacancy shall be filled whenever possible and reasonable by promotion of a qualified permanent employee from within the department or agency."

> Testimony clearly indicated that all employees appealing were qualified but that Mrs. Perry, a probationary employee with short term employment, exceeded the minimum qualifications for the position under question. While this may well be the situation, the fact remains that permanent employees were qualified but one was not selected.

The position of the Laconia State School and Training Center is one of reasonableness . . . . However, . . . all appealing candidates seeking the promotion are qualified . . . . In addition, no testimony was brought forward indicating that any of the appellants could not perform the functions of Assistant Resident Case Manager.

2. The School, by agreeing that a *probationary* employee exceeded the qualifications, actually was superimposing additional minimum qualifications upon those contained in the specification established January 22, 1976 for the classification. . . .

3. The spirit and intent of the Rules were not followed. Under General Statement of Policy, Section I E, *Purpose of Rules* reads "That state service, as far as practicable, be made attractive as a career, encouraging each employee to render his best services to the state." This tenet is one of the cornerstones of a sound merit system of personnel administration and must be adhered to.

The commission denied requests to stay the implementation of its order. In compliance with the decision, the position was vacated and plaintiff Perry was replaced by the defendant Fields, one of the original qualified permanent employees who had applied.

Review was sought by writ of certiorari because the appeal provisions of RSA 98:15, which refer to any "permanent" employee, do not apply to promotions and therefore the parties are not entitled to the appellate procedures under RSA ch. 541. *See Wilson v. Personnel Comm'n*, 117 N.H. 783, 378 A.2d 1375 (1977); *Tasker v. Personnel Comm'n*, 115 N.H. 204, 206, 338 A.2d 543, 544 (1975).

Motions filed in this court have raised procedural issues that we elect to consider. First, we decide whether Superintendent Melton, an appointing authority of a State agency, has standing to petition for a writ of certiorari in this court challenging the commission's reversal of his hiring decision. Second, we decide whether the commission, as a quasi-judicial entity seeking to vindicate its administrative decision, is a proper party defendant in a certiorari proceeding. When examining procedural aspects of certiorari petitions, we will look to analogous statutory administrative appeals processes and the case law that has concerned them to provide a "fair guideline." *Wilson v. Personnel Comm'n*, 117 N.H. 783, 785, 378 A.2d 1375, 1377 (1977).

*MELTON'S STANDING*

We first review the statutory rights of appeal under RSA 98:14, :15 and RSA ch. 541. The legislature, in creating the personnel system, has provided for review of the commission's actions by permitting liberal appellate rights. RSA 98:14 (hearings) allows "[a]ny employee affected by the allocation of a position in a classification" to be heard by the director and, if dissatisfied, to appeal to the commission. No further statutory right of appeal is granted. However, in an attempted appeal under this section we have held that "[a]lthough the plaintiffs have mistaken their remedy, our practice permits consideration of their petition as one for writ of certiorari." *Winn v. Jordan*, 101 N.H. 65, 67, 133 A.2d 485, 487 (1957). RSA 98:15 (appeal) permits permanent employees "who are dismissed or suspended" an appeal to the commission for review. "[T]he appealing employee and the appointing authority . . . shall have a right to be heard. . . . Any action or decision [of the commission] shall be subject to . . . appeal as provided in RSA 541." RSA 98:15.

A uniform statutory right of appeal was provided by the legislative enactment of RSA ch. 541 entitled "Certain rehearings and appeals." Section 3 (motion for a rehearing) permits any party to the action or "any person directly affected" by an order of the commission to apply for a rehearing. Section 6 (appeal) then permits an applicant to appeal to this court after such a rehearing. Section 8 (parties) provides that "[a]ny person or corporation whose rights may be directly affected . . . may appear and become a party, or the court may order such person and corporations to be joined as parties as justice may require." "The word 'person' may . . . be applied to bodies corporate and politic as well as to individuals." RSA 21:9. *See also City of Keene v. Zoning Board*, 114 N.H. 744, 746, 329 A.2d 141, 142 (1974); *BiRite, Inc. v. City of Concord*, 101 N.H. 291, 140 A.2d 566 (1958).

The choice of general all inclusive language in the designation of parties, coupled with the statutory scheme of appeal, shows a legislative intent to provide for judicial review of rulemaking orders and adjudicatory decisions of commissions and administrative agencies. This appellate procedure conforms to "the constitutional mandate that questions of law belong to the judiciary for final determination, as a necessary deduction of the required separation of the legislative, executive and judicial powers of government (Const., Part 1, Art. 37)." *Cloutier v. State Milk Control Board*, 92 N.H. 199, 201–02, 28 A.2d 554, 556 (1942). Determining whether an administrative action is reasonable " 'is a question of law which the [plaintiff is] entitled to have judicially determined. Individual rights should not be overriden with-

out judicial review.' " *H. P. Hood & Sons, Inc. v. Boucher*, 98 N.H. 399, 402, 101 A.2d 466, 468 (1953), *quoting Richardson v. Beattie*, 98 N.H. 71, 75, 95 A.2d 122, 125 (1953).

We hold that the legislature intended that any person, individual, or corporation (bodies corporate and politic), *whose rights may be directly affected*, may have recourse to the appeal provisions of RSA 541:8.

We next review the extent of this court's certiorari jurisdiction confirmed by RSA 490:4 (Supp. 1977). Certiorari is an extraordinary remedy and is not granted as a matter of right but rather at the discretion of the court "when the substantial ends of justice require such relief." *State v. N.H. Retail Grocers Ass'n, Inc.*, 115 N.H. 623, 625, 348 A.2d 360, 362 (1975). Nevertheless, we have indicated that we are not and will not be reluctant to grant extraordinary remedy when the right to relief is clear. *See generally Wilson v. Personnel Comm'n*, 117 N.H. 783, 378 A.2d 1375 (1977); *Connell's New & Used Cars, Inc. v. State*, 117 N.H. 531, 375 A.2d 257 (1977); *Forrest v. Personnel Comm'n*, 116 N.H. 203, 358 A.2d 408 (1976); *Winn v. Jordan*, 101 N.H. 65, 133 A.2d 485 (1957).

One object of RSA 490:4 (Supp. 1977) is to prevent and to correct errors and abuses of courts of inferior jurisdiction." "The superintending power of the court . . . does not depend upon, and is not limited by, technical accuracy of designation of legal forms of action.' " *State v. Harkaway*, 105 N.H. 42, 46, 192 A.2d 619, 622 (1963), *quoting Dinsmore v. Mayor & Alderman*, 76 N.H. 187, 190, 81 A. 533, 535 (1911). "On a sufficient petition, the question is whether there is an error correctible by the superintending power . . . ." *Boody v. Watson*, 64 N.H. 162, 173, 9 A. 794, 803 (1887).

In order to allow challenges of decisions that would otherwise escape review, we hold that standing to petition for certiorari should be liberally granted to any party *whose rights may be directly affected* by the decision of a lower tribunal. *See generally Wilson v. Personnel Comm'n*, 117 N.H. 783, 378 A.2d 1375 (1977). Therefore, because Superintendent Melton's discretion in hiring his support staff was directly affected by the commission's decision, we hold that he has standing to bring this petition.

## COMMISSION'S STATUS

In rejecting the commission's status as a proper party defendant, we endorse the principle enunciated in *Boston & Maine R.R. v. State*, 77 N.H. 437, 93 A. 306 (1915), a case involving an appeal brought pursuant to the precursor statute of the current RSA ch. 541.

This court rejected the status of a quasi-judicial administrative agency as a proper party defendant in a proceeding challenging one of its decisions. The court stated: "The impropriety of calling upon the commission to appear as defendants, presumably to defend their action in the matter appealed from is manifest . . . ." *Id.* at 438, 93 A. at 307. This principle was reinforced subsequently in *Grafton County Elec. Light & Power Co. v. State,* 77 N.H. 490, 500, 93 A. 1028, 1031 (1915). Nevertheless, since that time, the bench and bar have ignored the essence of these two decisions, and allowed quasi-judicial agencies to appear as party defendants before this court. We will no longer countenance this practice. We strongly endorse the policy of *Boston & Me. R.R. v. State supra,* and *Grafton County Elec. Light & Power v. State supra,* and hold that henceforth, in certiorari proceedings, unless otherwise provided for by statute or rule, a commission or administrative agency should not be named party defendant except in special and extraordinary circumstances. This rule shall also apply to all appeals brought under RSA ch. 541.

## MERITS

Having dispensed with the foregoing procedural questions, we turn to the merits of the plaintiffs' petition. The plaintiffs argue that the commission erred in its interpretation of the term "possible and reasonable" in Department of Personnel Rule II outlined previously. The plaintiffs base their reasoning on the language of the department's General Statement of Policy, Sections I, B and C, which read as follows:

> B. The promotion and increase of economy and efficiency in state service.

> C. Fair and equal opportunity to all qualified citizens to enter state employment on the basis of demonstrated merit and fitness as ascertained through fair and practical methods of selection.

The plaintiffs argue that the words "possible and reasonable," when read in conjunction with Sections B and C, do not operate to create a blanket requirement of promotions of qualified permanent employees over more qualified applicants. They contend that such an interpretation does not promote the concept, which they suggest should be basic to the State's hiring policy, that the best qualified individual should be promoted when an opening occurs.

The commission specifically found in the present case that all the permanent employee applicants were qualified. It found that in such

an instance, a permanent employee must receive the promotion, regardless of how superior the qualifications of a probationary employee might be. It was reasoned that when a probationary employee with superior qualifications was selected instead of a less qualified permanent employee, the school had improperly imposed qualifications in addition to those contained in the specifications for that classification. The commission ruled that the school had violated both the spirit and intent of the personnel rules regarding promotions. The commission's determination is not unreasonable.

The plaintiffs also contend that their interpretation of the term "possible and reasonable" is required by the commission's own previous decision in the *Wayne Brock Promotional Appeal* (January 4, 1978). In the *Brock* case, the commission ruled that:

> [J]ust meeting the minimum qualifications . . . should not be the sole criteria in the hiring process. There are other factors to be considered such as temperament, ability to express oneself, writing of reports, work compatibility . . . . From the evidence received the test of reasonableness . . . was met.

> The commission firmly supports the policy of placing the best qualified persons into state positions.

The commission, however, has distinguished the present case from the *Brock* appeal. The permanent employee in *Brock* was not promoted because the hiring authority believed that there were substantial problems with the applicant's personal qualities. In the present case, no testimony was presented to indicate that any of the aggrieved applicants could not perform the functions of the position because of any unacceptable personal traits or attitudes. Rather, the appointing authority found them all to have been qualified. The commission's rationale is reasonable.

The plaintiffs further claim that the commission did not consider an important reality. A pending federal suit for alleged violations of the patients' civil rights has resulted in proposed funding for the transformation of the school from a custodial facility to one where therapy and treatment will be afforded. Therefore, plaintiffs argue that there is a need for a "strong capable individual" to guide the staff through a transitional period that will be characterized by volatility in relationships between direct care staff and the professionals. The plaintiffs' argument fails, however, because they have neither shown that the qualified permanent employees are not "strong capable individuals," nor that hiring a qualified permanent employee would not be "possible and reasonable."

The parties agree that the standard of review we should apply in deciding the present case is expressed in *Wilson v. Personnel Comm'n*, 118 N.H. 424, 387 A.2d 1160 (1978). "The test to determine whether to grant a writ of certiorari is whether the 'agency has acted illegally in respect to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily or capriciously.' " *Id.* at 425–26, 387 A.2d at 1161 (citation omitted).

The department of personnel, under the direction of a personnel commission, was established as the agency responsible for "the recruitment, appointment, compensation, promotion, transfer, layoff, removal and discipline of state employees and for other incidents of state employment." RSA 98:3. Consideration and due weight must be given its decisions and judgments. *Cf. Univerity System v. State*, 117 N.H. 96, 369 A.2d 1139 (1977) (stating rule for review of PELRB decisions). "Now, as in the past, the findings of the personnel commission are given weight and are not set aside lightly." *Morse v. Personnel Comm'n*, 117 N.H. 525, 528, 374 A.2d 1176, 1178 (1977); *cf. Hamby v. Adams*, 117 N.H. 606, 376 A.2d 519 (1977) (stating rule for review of DES decision).

■■ In our review, "we are not at liberty to substitute our judgment for that of the commission or make findings de novo. Therefore, even if we would have come to a different conclusion from that of the agency, we cannot revise the agency decision if it could reasonably have decided as it did." *Wilson v. Personnel Comm'n*, 118 N.H. 426, 387 A.2d 1160, 1161 (1978) (citations omitted). Employing this standard of review, we hold that the commission's judgment is not so lacking in reason that it constitutes an abuse of discretion or an action that is arbitrary, unreasonable or capricious.

*Petition dismissed.*

DOUGLAS, J., concurred specially; the others concurred.

DOUGLAS, J., concurring specially. Although I totally disagree with the commission's refusal to approve the appointment of the best qualified person to an important supervisory position at the Laconia State School, our prior tests for review make correction of this ruling by us a difficult task. Nevertheless, the ruling is not consonant with good public personnel merit system management.

The commission ruled that a qualified permanent employee must receive the promotion, regardless of the superior qualifications of an applicant who is a probationary employee. In the commission's decision in the *Wayne Brock Promotional Appeal* (January 4, 1978), the

commission said that "just meeting the minimum qualifications for a position should not be the sole criteria in the hiring process." The commission concluded that it "firmly supports the policy of placing the *best qualified* persons into state positions." (Emphasis added.) Although the facts in *Brock* are distinguishable from those in this case, the policy is not. The *Brock* policy of placing the best qualified persons correctly defines the commission's Rule II, which provides that vacancies "shall be filled whenever possible and reasonable by promotion of a qualified permanent employee from within the department or agency." The interviewing doctor said that while it would have been possible to promote one of the other sixteen applicants, it would not have been reasonable to ignore the best candidate. Only this analysis of "possible and reasonable" guarantees citizens and taxpayers the "increase of economy and efficiency" in State service mentioned in the commission's General Statement of Policy Section I, B.

Over fifty years ago, a past president of the United States Civil Service Commission stated that the "aim of the Civil Service Commission is not merely to secure *good* employees for the Government; it endeavors to procure the *best available*." W. DEMING, APPLICATION OF THE MERIT SYSTEM IN THE UNITED STATES CIVIL SERVICE 4 (1928). Promotion policies for public employees are often misunderstood. One commentator notes that

> [f]rom the nature of the generalizations on the subject some personnel and employee groups would appear to assume that all employees are to be *guaranteed* promotions to new responsibilities from time to time; others seem to jump to the conclusion that outside recruitment is undesirable except for the *lowest* rung in the civil service structure. Few see a promotion program as merely part of a general staffing policy, a policy for filling positions with the ablest available talent, of which outside recruitment is another integral part at many levels in the structure.

O. G. STAHL, PUBLIC PERSONNEL ADMINISTRATION 109 (5th ed. 1962).

An exclusive "promote from within" policy ignores the "proper balance between inside and outside recruitment [that] lie[s] at the very heart of good personnel administration." *Id.* To conclude otherwise renders the phrase "whenever possible and reasonable" meaningless. The commission's ruling converts the personnel system into a protective guild rather than a merit system.

> The experiences with inbreeding do not contradict the importance of selection by promotion. Instead, they demonstrate the need for careful attention to ways and means and for avoidance of the oversimplified concept of promotion which results in little more than the progressive advancement of mediocrity. From our observation, [some] promotion-from-within systems . . . have failed to maintain live-wire organizations. . . .

*Id.* at 110.

The commission's promotion from within policy ignores the warning that

> [i]n spite of the values of promotion opportunity as a morale builder, we must not lose sight of the necessity for looking outside the service to fill many types of positions at the same time that candidates inside are being considered. This provides an opportunity to check on the range and type of experience of candidates from various sources. It is frequently essential if we are to fill a position with the "best available person."

*Id.* at 112. Professor Torpey agrees with Stahl that, if all other considerations are equal, promotion from within is an effective policy:

> A promotion program has as its nucleus a policy of promotion from within the organization, as long as there are qualified employees. This policy *does not comprehend* absolute selection from within *for all higher grade vacancies* for the reason that at least a comparatively small number of selections from the outside for these vacancies is desirable in order to bring new ideas into the organization.

W. TORPEY, PUBLIC PERSONNEL MANAGEMENT 125 (1953) (emphasis added).

It is unwise to promote an inferior candidate from within when a superior candidate from the outside is the best person available. The commission's ruling to the contrary appears to take the word "merit" out of the merit system.

The commission's ruling might be appropriate for the lower levels of the personnel system but is certainly inappropriate for supervisory positions. The commission is, of course, free to return to the *Brock* analysis in the future, because nothing in the majority decision of this court bars it from doing so.